**Jack MARTINDALE et al., Appellants,**

v.

**GULF OIL CORPORATION, Appellee.**

No. 6430.

Court of Civil Appeals of Texas.

Beaumont.

April 6, 1961.

Rehearing Denied May 3, 1961.

Barber & Seale, Jasper, for appellant.

Wm. F. Erwin, Jr., Houston, Joe Tonahill, Jasper, for appellee.

ANDERSON, Chief Justice.

The appeal is from an order granting a temporary injunction. On the petition of Gulf Oil Corporation, and after notice and a hearing, the trial court temporarily enjoined Jack Martindale, F. W. Martindale, A. L. Mays, Virgil Mays, and E. O. Aud:

"1. From interferring, either by word, act or deed, with the entry of plaintiff, its agents, servants, employees, or contractors upon the service station premises known as 'Aud's Service Station' located on U. S. Highway 96, Jasper County, Texas, in the performance of its contract with the defendant A. L. Mays;

"2. From storing, handling, selling or dispensing any product of any kind, class or character through plaintiff's equipment located on the said premises, except the plaintiff's products; and

"3. From painting, removing, changing or altering in any manner any of the plaintiff's equipment located on the said premises."

The contract to which the trial court referred, and on which the injunction is grounded, is a written contract Gulf Oil Corporation, as party of the first part, and A. L. Mays, who is therein described as "party of the second part situated U. S. Hwy. No. 96 City of Jasper County of Jasper State of Texas," entered into under date of August 10, 1953. It became effective September 1, 1953, and, subject to specified rights of cancellation, was to remain in force for a period of ten years from that date, or through August 31, 1963.

The "service station premises" to which the court referred are situated in Jasper, Texas, on U. S. Highway No. 96, are owned by Virgil Mays, are in the posses-sion of E. O. Aud, a tenant, and are under a term lease to Jack Martindale and F. W. Martindale. To the extent that they comprise land, they are also premises A. L. Mays and his wife owned as community property when the aforesaid contract was made. A service station which Mr. and Mrs. Mays likewise owned, and which was being operated by E. O. Aud, was on the land at that time, but it has since been replaced by another. The existing station was not built until after Mrs. Mays had died, having been built in May, 1959, and she having died in September, 1958.

The equipment to which the trial court referred as "plaintiff's equipment located on the said premises" is equipment Gulf Oil Corporation installed on the premises to facilitate sales of its own petroleum products, and to which that company has retained title. It consists of pumps, tanks and other items common to service stations.

The contract between Gulf Oil Corporation and A. L. Mays, in pertinent part, is as follows:

"The party of the first part sells and agrees to deliver to the party of the second part and the party of the second part purchases and agrees to receive from the party of the first part, during the term of this contract, second party's entire requirements of Gulf petroleum products, consisting of * *.

*    *    *    *    *    *

"This contract is not assignable, except with the written consent of first party.

*    *    *    *    *    *

"It is also agreed between Mr. A. L. Mays, property owner of subject service station location, and the Gulf Oil Corporation, party of the first part, that this contract shall become effective only when the said Mr. A. L. Mays receives from the said Gulf Oil Corporation payment for one Westinghouse 1½ H.P. Air Compressor in the

amount of $440.00 and one Model 10 B R Joyce Lift in the amount of $495.-00, which the Gulf Oil Corporation is purchasing from the property owner, Mr. A. L. Mays, in return for which Mr. Mays' service station will handle Gulf Petroleum products for a period of ten years, beginning September 1, 1953."

Except as already reflected, no Mays property was or is described, mentioned or alluded to in the contract. However, to the extent that they contracted with reference to a specific service station or with reference to specific service-station premises, it is undisputed that the contracting parties had reference to the station and premises E. O. Aud had in charge when the contract was made.

Mr. Aud, who all along has operated the service station under a verbal agreement with its owners, apparently as a tenant at will, paying as rental one and one-fourth cents on each gallon of gasoline sold at it, acquiesced in the contract between Gulf Oil Corporation and A. L. Mays, ceased selling the brand of petroleum products he had theretofore sold, and since September 1, 1953, has sold only Gulf products. He now proposes, however, to discontinue selling Gulf products and to begin selling the products of Mobil Oil Company. The Martindales and Virgil Mays are agreeable to the change and are even disposed to require it.

The following sequence of events rounds out the background of the controversy: When Mrs. A. L. Mays died in September, 1958, her four children by Mr. Mays, one of whom was Virgil Mays, inherited her undivided one-half interest in a sizable tract of land she and her husband owned as community property, a part of which was the service-station premises E. O. Aud had in charge. In the spring of 1959 the existing service station was built and Gulf Oil Corporation installed in it or on the premises new pumps, tanks and other equip-

ment, at an expense to itself of $5,725. The Martindales, who are distributors in Jasper for Mobil products, then talked to some of the Mays children about converting the service station from a Gulf to a Mobil station. In September, 1959, by a letter purporting to be from A. L. Mays but actually written by Virgil Mays, Gulf Oil Corporation was requested to invoice its equipment on the premises to Magnolia Petroleum Company, which has since become Mobil Oil Company. Gulf Oil Corporation's dealer or distributor in Jasper thereupon went to see A. L. Mays and agreed that if no change was made he would supplement what Aud was paying Mr. Mays to the extent of one-fourth cent per gallon on each gallon of gasoline sold at the Aud station, the same to be paid from his own commissions on sales. A. L. Mays agreed that on this basis Gulf products would continue to be sold at the service station. Virgil Mays was apparently present at this conference. The Martindales renewed their efforts to have the station converted to a Mobil station. They offered to pay the owners as rental one and one-half cents on each gallon of gasoline sold and to guarantee a minimum rental of $250 per month. Some of the Mays children desired to sell their interests in all of the land that was jointly owned. The entire tract, including the filling station premises, was then offered for sale. The Martindales and perhaps others dickered for it but did not succeed in buying it. Virgil Mays finally decided that he wanted the whole of the jointly owned property and succeeded in buying it from his co-owners. The land was conveyed to him under date of February 1, 1960. On April 18, 1960, he reconveyed a part of the land, but not the filling station premises, to his father. On May 31, 1960, he leased the filling station premises to the Martindales for a term of three years from that date, the rental to be one and one-half cents per gallon on gasoline sold, but in no event less than $250 per month. Virgil Mays purchased and the Martindales leased with full knowledge of the contract between

Gulf Oil Corporation and A. L. Mays. Demand was soon made of Gulf Oil Corporation that it either invoice its equipment on the premises to Mobil Oil Company or else remove it. Gulf Oil Corporation refused to do either. A forcible entry and detainer suit was then brought against it in the Justice Court at Jasper. The suit was dismissed for want of jurisdiction and was appealed to the county court of Jasper County. A hearing was had in the latter court but no order or judgment had there been entered when the injunction that is before us was granted.

In granting the relief it did, the trial court necessarily treated the contract between Gulf Oil Corporation and A. L. Mays as binding the service-station premises or as binding Virgil Mays and the Martindales personally. We believe that, in so doing, the court fell into error. We accordingly sustain appellants' second point.

■ Appellee does not claim that Virgil Mays and the Martindales have become subjected to the contract otherwise than by purchasing and leasing the service-station premises with knowledge of it. The contract was not thereby rendered personal to any of them. It affects them and their rights, therefore, only in the event it created some estate in the premises or placed the premises under a covenant or burden that passed with them. We are of the opinion that it did neither of these things. No estate which the law recognizes has been suggested by appellee as having been created in the premises by the contract, and none that may have been created occurs to us. It definitely may be said that a leasehold estate was not created, because a right of possession in Gulf Oil Corporation was neither granted nor contemplated. Brown v. Johnson, 118 Tex. 143, 12 S.W.2d 543. As we view it, the contract is merely a personal contract between Gulf Oil Corporation and A. L. Mays, and is one which A. L. Mays is no longer in position to give application to the premises in question.

Appellee pleaded and attempted to prove that A. L. Mays, Virgil Mays, and the Martindales conspired and acted together to avoid the effects of the contract, but it did not take the position in the trial court and does not now contend that the sale by A. L. Mays and his three children to Virgil Mays was a simulated sale or that Virgil Mays is not the bona fide owner of the property. As the owner, he is entitled to the use of his property unencumbered by the contract.

■ Appellants were properly enjoined in the following respects:

"2. From storing, handling, selling or dispensing any product of any kind, class or character through plaintiff's equipment located on the said premises, except the plaintiff's products."

They were also properly enjoined from painting and from "changing and altering in any manner" any of the plaintiff's equipment, provided "changing and altering" has reference to changing or altering the condition of the equipment itself as distinguished from changing or altering its position.

In all other respects, appellants were improperly enjoined. The judgment or order of the trial court is accordingly reformed so as to delete from it all other aspects of the injunction than those just above mentioned, and as regards those other matters the injunction is dissolved. All costs of appeal are taxed against appellee.

Judgment reformed and, as reformed, affirmed.

McNEILL, J., not sitting.