**SUPERIOR PHONES, LTD. and Wanda Baucom,Appellants,**

v.

**CHEROKEE COMMUNICATIONS, INC., Appellee.**

No. 13–96–325–CV.

Court of Appeals of Texas, Corpus Christi.

Feb. 12, 1998.

---

J. R. Schneider, Jr., Schneider & McWilliams, P.C., George West, for Appellants.

Marion E. Williams, Jr., Beeville, Michael E. Starr, Tyler, for Appellee.

Before DORSEY, YANEZ and RODRIGUEZ, JJ.

## OPINION

YANEZ, Justice.

Superior Phones, Ltd. and Wanda Baucom (hereinafter collectively referred to as "Superior") appeal a judgment for past and future damages plus pre-judgment interest in favor of Cherokee Communications, Inc. (hereinafter "Cherokee") in a tortious interference with contract cause of action. By seventeen points of error, Superior challenges the legal and factual sufficiency of the evidence for various findings of fact and conclusions of law, and claims the trial court abused its discretion in allowing particular testimony regarding damages and in not granting Superior's motion for sanctions. We reverse and render.

### FACTUAL AND PROCEDURAL BACKGROUND

Two pay telephone service agreements animate this conflict. On or about July 10, 1988, Jack Taylor entered into an agreement with Southwest Pay Telephone Systems (hereinafter "Southwest") to provide pay telephone service at Taylor's Corner convenience store, located in Bee County, Texas. This agreement (hereinafter "the Taylor Agreement) provided for renewal according to its terms at the end of an initial five-year period. The convenience store at Taylor's location subsequently became known as Shane's Shop–ALot Chevron. On or about November 18, 1988, Pam Capps entered into an agreement with Southwest to provide pay telephone service at Rockin' A Foods in Bee County. Pam Capps leased the location of Rockin' A Foods as an agent for Rockin' A Foods. The agreement (hereinafter the "Rockin' A Agreement") provided for renewal according to its terms at the end of an initial five-year period. On or about May 6, 1993, Southwest assigned its interests in these two agreements to Cherokee.

On or about February 23, 1993, Renea Martin began leasing Taylor's location; and between February 23, 1993 and May 1993, she leased Rockin' A Foods from Al Phillips, another agent for the store. On or about April 29, 1993, Martin entered into an agreement with Superior by which Superior would provide pay telephone services at the Taylor business location; and on or about June 7, 1993, she entered an agreement with Superior by which Superior would provide pay telephone services at Rockin' A Foods.

In June 1993, Martin and Superior learned of Southwest's assignments to Cherokee. Superior subsequently requested that Cherokee remove its pay telephones from the Taylor and Rockin' A locations, and Cherokee refused. On September 3, 1994, after sending two certified letters warning Cherokee of its intended actions, Superior removed Cherokee's pay telephones from the Taylor and Rockin' A premises and placed the tele-

phones in storage. Superior then installed its pay telephones at the locations and informed Cherokee by certified letter of the actions it had taken and how Cherokee could obtain the removed telephones.

On November 29, 1994, Cherokee filed an original petition in the 156th District Court in Bee County, asserting causes of action against Superior, Wanda Baucom, who is an agent for Superior, and Martin, d/b/a Martin Investments, for tortious interference with contract, conspiracy, and conversion. Martin filed a general denial on January 19, 1995. On May 15, 1995, Martin filed an amended original answer, by which she alleged that Cherokee breached its obligation of good faith performance of contract; Martin also counterclaimed against Cherokee and cross-claimed against Superior and Baucom, asserting, respectively, that Cherokee failed to respond to her calls for service and thereby breached its contract and that only Superior took the action of removing Cherokee's telephones. On September 22, 1995, Superior filed a first amended original answer, by which it both specially excepted to various parts of the original petition and counter-claimed against Cherokee, asserting that Cherokee's wrongful refusal to remove its equipment resulted in Superior losing profits. Superior also filed an original third-party petition, asserting entitlement to contribution from Jack Taylor, Al Phillips, and Eddie Marshall, Sr., who is president and chief executive officer of Cherokee, in the event Superior was found liable. On September 27, 1995, Cherokee nonsuited Martin. On October 2, 1995, Martin nonsuited Cherokee.

On October 31, 1995, Cherokee filed its second amended original petition, by which it alleged tortious interference with contract and conversion against Superior and Wanda Baucom and prayed for damages, exemplary damages, and pre- and post-judgment interest. On November 6, 1995, claiming there was no basis for Cherokee's lawsuit, Superior moved for sanctions against Cherokee under rule 13 of the rules of civil procedure. On December 11, 1995, the motion for sanctions was denied.

The case was tried to the court on November 7, 1995. On February 22, 1996, Superior filed a motion for judgment, arguing that the case was submitted to the court when it would have been proper to direct or instruct a verdict. On March 14, 1995, the court signed its judgment in favor of Cherokee. On April 11, 1996, Superior filed a motion for new trial, which the court denied on June 13, 1996. The court issued findings of fact and conclusions of law on April 18, 1996.

## DID CHEROKEE HAVE AN APPLICABLE EXCLUSIVE RIGHT?

We first will address Superior's points of error challenging the trial court's determination that Cherokee had a valid right to provide telephone service at the convenience store locations leased by Martin. By points of error one and two, Superior argues that the trial court erred in not granting its motion for judgment or its motion for new trial, because the evidence was legally and factually insufficient for support of the court's findings that Cherokee had an exclusive right to provide the pay telephone service and that Superior's removal of the Cherokee pay telephones constituted tortious interference with contract. Superior specifically challenges the following findings of fact:

1. [Cherokee] was the purchaser of two pay telephone service agreements which conveyed to Cherokee an exclusive right to provide pay telephone service to two convenience store locations in Beeville, Bee County, Texas: Taylor's Corner located on Highway 181 Bypass North at Charco Road (hereinafter the "Taylor Agreement"); and Rockin' A Foods located at 601 East Houston St. (hereinafter the "Rockin' A Agreement").

3. An assignee of the interest of Southwest Pay Telephone Systems in the Taylor Agreement and the Rockin A' Agreement, Cherokee had an exclusive right to provide pay telephone service to the convenience stores referenced in those agreements.

4. The Taylor Agreement and Rockin' A Agreement both provided for five (5) year terms which were automatically renewed for successive five (5) year terms unless written notice to terminate was provided to Southwest Pay Telephone Systems or its

successor in interest. The Taylor Agreement was renewed automatically for a five year term beginning July 10, 1993. The Rockin' A Agreement was renewed automatically for a five year term beginning January 4, 1994.

7. Renea Martin leased the two convenience stores in question subject to the exclusive right of Cherokee to provide pay telephone service to those locations.

12. The Taylor Agreement and the Rockin' A Agreement were in existence when Superior and Baucom entered into their own pay telephone service contracts with Renea Martin to provide service to the convenience stores in question.

13. Removal of Cherokee's pay telephone equipment and implementation of Superior's phone service by Superior and Baucom constituted a wilful and intentional interference with Cherokee's exclusive contractual right to provide pay telephone service to the two convenience stores in question.

Superior specifically challenges the following two conclusions of law:

1. The Taylor Agreement and Rockin' A Agreement provided to Cherokee an exclusive right to provide pay telephone service to the two convenience stores referenced in those contracts during the term of the contracts.

2. Renea Martin leased the two convenience stores in question subject to the exclusive right of Cherokee to provide pay telephone service to those locations.

By its fifteenth point of error, Superior claims the court erred in not granting both the motion for judgment and motion for new trial, on the ground that the judgment rendered was against the great weight and preponderance of the evidence. We take this argument as another factual sufficiency challenge to the two conclusions of law above and will treat it accordingly. By its third and fourth points of error, Superior alleges the trial court erred in reaching the above findings of fact and conclusions of law, on the ground that there was no privity of estate between the parties to the Taylor and Rockin' A Agreements. We take this argument as another legal sufficiency challenge to con-

clusions of law one and two and will treat it accordingly. In response to these arguments, Cherokee contends that without disputing almost all of Superior's rendition of the facts, Texas case law simply supports the court's findings and conclusions that Cherokee had a valid, exclusive license to provide pay telephone service on the two premises. Cherokee further alleges that the presence of their phones on the convenience store premises served as notice to Superior of Cherokee's right of exclusive service.

By points of error five and six, Superior challenges the trial court's finding of fact and conclusion of law that Martin's acceptance and negotiation of royalty checks from Cherokee served to ratify the Taylor and Rockin' A Agreements. Cherokee responds that it does not need this finding or conclusion for support of the court's judgment. Rather, Cherokee argues there is no evidence that Martin ever terminated even a month-to-month, terminable-at-will contract.

By points of error seven and eight, Superior challenges the legal and factual sufficiency of the court's finding of fact and conclusion of law that Superior's removal of the Cherokee telephones constituted tortious interference with Cherokee's contractual rights.

The elements of the tortious interference with contract cause of action are: (1) the existence of a contract subject to interference; (2) a wilful and intentional act of interference; (3) such act was a proximate cause of damage; and (4) actual damage or loss occurred. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 926 (Tex.1993); *Exxon Corp. v. Allsup,* 808 S.W.2d 648, 654 (Tex.App.—Corpus Christi 1991, writ denied).

In reviewing legal sufficiency challenges, we must consider only the evidence and inferences tending to support the findings and disregard all evidence and inferences to the contrary, and if there is any evidence of probative force to support the findings, the claims must be overruled. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *Soto v. Sea–Road Int'l, Inc.,* 942 S.W.2d 67, 71 (Tex. App.—Corpus Christi 1997, writ denied). In conducting a factual sufficiency review, we

consider all the relevant evidence and may reverse the challenged finding only if it is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Soto*, 942 S.W.2d at 71.

The Taylor and Rockin A' Agreements expressly purport to convey to Southwest "an exclusive right and license." The agreements state that, during their term, the respective lessors, Taylor and Capps, "shall not grant the right or use of installing and operating pay telephone service on the location described herein to any other company or person, including the local telephone company." Each agreement provides that it "shall be automatically renewed for successive five (5) year terms unless, at least ninety (90) days prior to the expiration period of any term hereof, LESSOR gives written notice to LESSEE of LESSOR's intent to terminate this Agreement." Both agreements provide that the respective lessor has the authority to enter into the agreement, and "in the event of a sale of the location or assignment, sublease or other transfer of the lease covering the location, same shall be made subject to [the agreement]." Both agreements purport to "bind the parties, their successors and assigns." Both allow Southwest to terminate the agreements at any time and the right to assign the agreements. Neither agreement includes a granting clause, *i.e.*, language by which the lessor conveys to the lessee a tract of property for the purposes designated in the agreement.

■ Because the agreements do not contain granting clauses, we first hold that they are not licenses. *Vallejo v. Pioneer Oil Co.*, 744 S.W.2d 12, 14–15 (Tex.1988) (despite written agreement containing many provisions of valid lease, in the absence of granting clause it does not constitute a lease).[1] We next consider whether either service agreement could run with the transfers of the property to Martin.

Case law indicates that agreements could not so run. In *Clear Lake City Water Auth. v. Clear Lake Util. Co.*, 549 S.W.2d 385, 387–88 (Tex.1977), a development corporation had granted Clear Lake Utilities the exclusive right to furnish water and sewer service to a real property development, and the right was to be binding upon and to inure to the benefit of successors and assigns, such that it would constitute a covenant running with the land. By its claim against successor Clear Lake Apartments, Clear Lake Utilities attempted to invoke the doctrine of equitable obligation or servitude, by which one landowner's promise binds a subsequent possessor who acquires the land with notice of the promise. *Clear Lake City Water Auth.*, 549 S.W.2d at 388. The supreme court held that the grant from the development corporation could not be classified as an "exclusive franchise," because enforcement of the provision would not have restricted the corporation in the use of its real property. *Id.* "At most," the court explained, "[the corporation's] promise limited [its] freedom to contract with other suppliers of water and sewer service. Such a limitation affects the use of land only collaterally and will not create an equitable servitude upon the land." *Id.*

Similarly, in *Martindale v. Gulf Oil Corp.*, 345 S.W.2d 810, 811–13 (Tex.App.—Beaumont 1961, writ ref'd), the Beaumont Court of Appeals held that a contract between a former owner of a filling station and Gulf Oil that the station owner would purchase petroleum products exclusively from Gulf did not create any estate in premises that would pass to or burden a purchaser of the station. Because the contract was not rendered personal to the successor parties, the court explained that the contract affects them and their rights only if it created some estate in the premises or placed the premises under a covenant or burden. *Id.* at 813. Because the agreement contained no granting clause, the court held that the contract was merely personal between the original parties, such that the successor purchaser was not bound by the agreement. *Id.*

■ The Taylor and Rockin A' Agreements created no estate in the premises for

---

1. Cherokee erroneously "concedes" that because there are no granting clauses in the service agreements, they are mere licenses.

Southwest. At most, the agreements purport to limit successor Martin's freedom to choose pay telephone service for the business premises, which would affect the use of the real property she leased only collaterally. We hold that no valid agreement bound successor Martin to remain with Southwest's assign, Cherokee, for her pay telephone service; she was free to contract with Superior for her pay telephone service. We hold that the trial court erred in concluding both that Cherokee had an exclusive right to provide the pay telephone service to the convenience stores and that Martin leased the stores subject to such right.

■ We next address whether Martin ratified the Taylor or Rockin A' Agreements, or otherwise entered into a separate exclusive pay telephone service agreement with Cherokee, by accepting and negotiating royalty checks from Cherokee. That Martin received such checks following her leasing of the Taylor and Rockin' A premises is undisputed. That her leasing agreements with Taylor and Phillips for the convenience stores made no reference to the pay telephones on the premises or any service agreements regarding them is undisputed. That she complained to Cherokee of poor service and wanted to change pay telephone provider service also is undisputed. There is no evidence that she signed any binding service agreement with Cherokee or was offered a long-term service agreement from Cherokee. Cherokee argues Martin never attempted to give notice of termination of Cherokee's service, but, as we have determined, Martin was under no obligation to continue Cherokee as her pay telephone provider. There is no allegation or evidence that Cherokee sent her any significant royalty checks after the Cherokee telephones were removed or that she received and negotiated royalty checks from Cherokee issued to her after the Cherokee telephones were removed. Accordingly, we hold that Martin did not at any point subscribe to the terms of the original Taylor or Rockin A' Agreements (with Southwest or as assigned to Cherokee), nor did she enter into any separate service agreement with Cherokee.

■ Cherokee argues that the unenforceability of the exclusive service agreement between Martin and Cherokee is not a defense available to Superior against the action for tortious interference with contract. *See Clements v. Withers,* 437 S.W.2d 818, 821 (Tex.1969) (holding that the unenforceability of a contract between two parties is a not a defense to a third party for tortious interference with the contract's performance). As applied, this argument is meritless for two reasons. First, there simply was no agreement between Martin and Cherokee for an exclusive provision of pay telephone service by Cherokee. Second, because Martin was under no obligation to remain with Cherokee for her pay telephone service and thus was free to contract with Superior, Superior's contractual right to provide services was superior to Cherokee's contract-based claim of exclusive service. *Black Lake Pipe Line Co. v. Union Const. Co.,* 538 S.W.2d 80, 91 (Tex. 1976) ("Interference with contractual relations is privileged where it results from the exercise of a party's own rights or where the party possesses an equal or superior interest to that of the plaintiff in the subject matter.").

Points of error one through eight and point sixteen are sustained.

### CONVERSION

By points of error nine and ten, Superior challenges the court's findings of fact and conclusions of law that Superior's removal and storage of the Cherokee pay telephones was an act of conversion. Superior alleges that Cherokee's conversion claim rests on the erroneous conclusion that Cherokee had an exclusive right to provide pay telephone service at the convenience stores. Cherokee offers no specific reply to this point.

■ "Conversion" is the wrongful exercise of dominion and control over another's property in denial of or inconsistent with that person's rights. *Virgil T. Walker Const. Co., Inc. v. Flores,* 710 S.W.2d 159, 160 (Tex. App.—Corpus Christi 1986, no writ). We have determined that Martin was not bound to retain Cherokee pay telephones on her business premises. Martin and Superior entered an agreement by which Superior would

provide exclusive pay telephone service on those business locations. The record reflects two written notices from Superior to Cherokee, via certified mail, requesting removal of the telephones, and a third letter from Superior to Cherokee, via certified mail, informing Cherokee that it had removed the telephones and placed them in a specific location, at which Cherokee could retrieve them pending payment of charges incurred in the removal and storage process. Accordingly, we hold that the trial court erred in determining that Superior's removal and storage of the Cherokee pay telephones constituted conversion. Points of error nine and ten are sustained.

## SANCTIONS

By point of error seventeen, Superior alleges the trial court abused its discretion by not granting rule 13 sanctions against Cherokee. Superior suggests that the theories pleaded by Cherokee are debunked in any first-year law school property course.

Rule 13 of the Texas Rules of Civil Procedure allows a court to impose sanctions on a party filing a groundless suit and in bad faith. Tex.R. Civ. P. 13. We review the denial of a rule 13 motion for sanctions under an abuse of discretion standard. *Home Owners Funding Corp. of Am. v. Scheppler*, 815 S.W.2d 884, 889 (Tex.App.—Corpus Christi 1991, no writ). Accordingly, we consider whether the trial court acted without reference to any guiding rules or principles. *Id.*

We reject the suggestion that the proper disposition of this case was so obvious that the trial court should have levied sanctions against Cherokee. Were this area of the law so clear, surely Superior would not have placed language in its service agreement with Martin by which it purported to bind any successor to Martin to an exclusive pay telephone service agreement with Superior. Point of error seventeen is overruled.

By our disposition of Superior's other points of error, we need not address the factual sufficiency challenge raised in point of error fifteen.

Accordingly, we reverse the judgment of the trial court and render that Cherokee take nothing by its claim against Superior.