

# NUMBER 13-24-00269-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**SOUTH TEXAS WASTEWATER, LLC,**                     **Appellant,**

**v.**

**VALLEY DEWATERING SERVICES, INC.,**               **Appellee.**

---

## ON APPEAL FROM THE 476TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

---

# MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Peña and West**
**Memorandum Opinion by Justice West**

The trial court granted appellee Valley Dewatering Services, Inc.'s motion for (1) traditional summary judgment on its claim for suit on sworn account and (2) no-evidence summary judgment on appellant South Texas Wastewater, LLC's claims for negligent misrepresentation and breach of contract. Appellant argues that the trial court

erred when it granted appellees' motions because appellant established a genuine material fact issue as to both of its claims. We affirm.

## I.  BACKGROUND

Appellee operates a wastewater processing facility that treats grease trap and septic waste. The treated discharge is then released into the City of Mercedes (City) sewer system. Appellant is a company that collects waste from commercial and institutional facilities in the Rio Grande Valley. Appellant has discharged its waste at appellee's facility for a fee that appellee has increased over the years. The parties do not purport to have a written contract.

On January 12, 2023, the City blocked appellee's discharge line connecting to the City's system. On January 21, 2023, appellee informed appellant that it could no longer accept its waste. In April 2023, appellant filed a lawsuit alleging negligent misrepresentation and breach of contract against appellee. Appellee countersued appellant for suit on sworn account. Several months later, appellee moved for traditional summary judgment on its claim[1] and no-evidence summary judgment on appellant's claims.

Appellant responded with the following summary judgment evidence: (1) Howard Adams's affidavit, (2) Sergio Garcia's affidavit, and a (3) mediated settlement memorandum. Howard Adams attested that he is the President of appellant and a founding shareholder of appellee. He further attested as follows:

> Between on or about May 18, 2011 and January 20, 2023, [appellant] relied upon the [appellee] Facility. [Appellant] is a party to numerous contracts with third parties which relied on its ability to dump at the [appellee] Facility

---

[1] Appellee attached several items of evidence in support of its traditional motion for summary judgment.

for the prices quoted to it by [appellee]. Approximately forty percent (40%) of [appellant]'s business is with schools, which negotiate long-term contracts with service providers such as [appellant].

[Appellant] was the principal client of [appellee] and accounted for a significant amount of its business prior to January 20, 2023.

[Appellee] quoted [appellant] a price of 15 cents per gallon in October, 2018. [appellee] raised that rate to 16 cents per gallon in May, 2022 and to 18 cents per gallon in November, 2022.

At the December 21, 2022, (sic) [] Atkinson revealed for the first time that [appellee] had received a letter from the [City] dated July 5, 2022, alleging issues with the discharge from the [appellee] Facility. [] Atkinson also represented that the corporation had purchased equipment to treat the wastewater so that there would no longer be problems with the discharge equipment to treat the wastewater so that there would no longer be problems with the discharge into the City's sewer system. [] Atkinson further represented that the City had conducted tests on samples of [appellee]'s wastewater and that it had met requirements for discharge into the City's sewer system.

Atkinson assured me and the other individuals at the meeting that the matter had been handled and that there were no additional actions that needed to be taken by [appellee].

On or around January 21, 2023, an employee of [appellee] telephoned me to advise that the [appellee] Facility could not accept any grease because the [City] had capped the discharge line.

[Appellant] was left without the means to fulfill service contracts without incurring additional travel and other expenses. The company lost its ability to provide service to customers, incurred additional expenses, and lost profitability. Due to these circumstances, it was necessary for [appellant] to offset its losses against what might otherwise be owed to [appellee].

Sergio Garcia attested to his expert credentials and the following related to appellant's damages:

In arriving at the opinions expressed in this Affidavit, I have reviewed the following documents: the monthly operating financial reports for [appellant] . . . from January 2019 through December 2023. It was not

3

necessary for me to review any specific publications to arrive at the opinions expressed in this Affidavit.

> Based on my review of the above materials, and based upon my education, training, knowledge and experience, I have concluded each of the following:
>
> > There was an interruption in the business activities of [appellant] during the period February – April, 2023;
> >
> > The aforementioned interruption in business activities resulted in a loss of gross revenues circa $120,000.00; and,
> >
> > Marginal losses to the company were in an amount of not less than $90,000.00.

The mediated settlement memorandum was executed in March 2023 and provides that appellee will pay a sum of money to the City over a five-year period related to "past industrial charges;" the City and appellee will enter another agreement related to the rates appellee will be charged by the City for future treated industrial waste; the parties will agree to a timeline for assessing "fines/plugging" and "submitting/reviewing" an "exceedance report;" appellee voluntarily agrees to immediately reduce its waste discharge levels to a particular quantity; appellee will install a flow metering system in accordance with various requirements; and appellee will arrange for monthly composite sampling at a City approved and accredited laboratory. The trial court granted both of appellee's motions. This appeal followed.

## II. STANDARD OF REVIEW & APPLICABLE LAW

We review an order granting a motion for summary judgment de novo. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021). In de novo review, we exercise our own discretion and accord no deference to the trial court's decision. *Vaughn*

4

*v. Vaughan*, 710 S.W.3d 412, 418 (Tex. App.—Eastland 2025, pet. denied) (citing *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998)).

If a claimant moves for traditional summary judgment on his claim for which the non-movant pled an affirmative defense, the claimant is entitled to summary judgment if he demonstrates there is no genuine material factual issue on each element of his claim, unless the nonmovant demonstrates a genuine material fact issue regarding each element of his affirmative defense. *Fortitude Energy, LLC v. Sooner Pipe LLC*, 564 S.W.3d 167, 180 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 143 (Tex. App.—Corpus Christi–Edinburg 2006, pet. denied). Where a genuine issue of material fact is raised by the nonmovant on each element of his affirmative defense, traditional summary judgment is precluded. *Barrand, Inc.*, 214 S.W.3d at 143.

In contrast, "a party may obtain a no-evidence summary judgment when 'there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial.'" *Hernandez*, 622 S.W.3d at 864 (citing TEX. R. CIV. P. 166a(i)). "A properly filed no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine issue of material fact supporting each element contested in the motion." *Id*. Where the non-movant responds with evidence raising a genuine issue of material fact as to each element of the claim or defense, summary judgment is precluded. *Id*.

To determine if a genuine issue of material fact exists, "we take as true all evidence favorable to the non-movant, indulge every reasonable inference in favor of the non-movant, and resolve any doubts in the non-movant's favor." *First United Pentecostal*

*Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017). "The evidence raises a genuine issue of material fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence presented." *City of Stephenville v. Belew*, 692 S.W.3d 347, 361 (Tex. App.—Eastland 2024, pet. denied) (citing *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007)). Evidence that merely raises surmise or suspicion fails to raise a genuine material fact issue. *Long v. Riedel*, 710 S.W.3d 381, 388 (Tex. App.—Fort Worth 2025, no pet.); *In re Cobb*, 714 S.W.3d 656, 666 (Tex. App.—Corpus Christi–Edinburg 2024, no pet.).

### III.     NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

### A.     Negligent Misrepresentation

> To prevail on a cause of action for negligent misrepresentation, a plaintiff must show: (1) a representation made by a defendant in the course of its business or in a transaction in which it has a pecuniary interest; (2) the representation conveyed false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653–54 (Tex. 2018). We find appellant failed to establish a genuine issue of material fact as to the second, third, and fourth elements.

### i.     False Information

Appellant complains that Atkinson made several false representations at the December 2022 meeting. Specifically, appellant argues that Atkinson represented that (1) appellee purchased equipment so there "would no longer be problems with the discharge into the City's sewer system," (2) "the City had conducted tests on samples of [appellee]'s wastewater, and that [appellee] had met requirements for discharge into the

6

City's sewer system," and (3) "that the matter had been handled and that there were no additional actions that needed to be taken by [appellee]."

Appellant failed to provide any evidence that, when the representations were made, the City had not conducted samples yielding results that met its requirements, and the matter was not handled. Furthermore, under the false information element, there must be proof that the representation was a misstatement of existing fact. *Rhey v. Redic*, 408 S.W.3d 440, 452 (Tex. App.—El Paso 2013, no pet.). A promise of future performance is insufficient. *Id*. To the extent that appellee's representations promise future operations and compliance with the City's regulations, such fail to establish a misstatement of existing fact. *See AKB Hendrick, LP v. Musgrave Enters., Inc.*, 380 S.W.3d 221, 238 (Tex. App.—Dallas 2012, no pet.) (holding representations from the agent of a prospective nonprofit-purchaser that he was confident in a plan for his nonprofit to purchase the ranch and that he would help pay any required inspection costs were not proved false when made despite the agent's subsequent unwillingness to pay inspection costs and the transaction falling apart); *Manon v. Solis*, 142 S.W.3d 380, 389 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (holding that an employer's pre-employment representations to appellant "that he was in the process of hiring additional attorneys is not proved false, as appellant suggests, by the mere facts that (1) she was told by [the employer] after accepting employment that he was not going to hire additional attorneys, and (2) [the employer] did not in fact hire any additional attorneys"); *Airborne Freight Corp., Inc. v. C.R. Lee Enters., Inc.*, 847 S.W.2d 289, 292 (Tex. App.—El Paso 1992, writ denied) (holding that, where an employer represented to a contractor "as long as you do your job, you'll have a job," the contractor's subsequent termination was insufficient to prove a

7

misstatement of then existing fact); *see also Crane v. Hanna*, No. 13-18-00534-CV, 2020 WL 3478673, at *3 (Tex. App.—Corpus Christi–Edinburg June 25, 2020, no pet.) (mem. op.) (listing several cases finding no misstatement of existing fact where the proponent of a statement promised future conduct or opined on future expectations).

Given the foregoing, there is no evidence providing more than mere surmise or suspicion that Atkinson's December 2022 representations misstated an existing fact. *See Long*, 710 S.W.3d at 388; *Cobb*, 714 S.W.3d at 666. Thus, appellant failed to present a genuine material fact issue. *See Belew*, 692 S.W.3d at 361.

ii.     **Reasonable Care or Competence**

Appellant does not directly cite any evidence for this element but avers that it produced more than sufficient evidence and argues that (1) it "appears" appellee did not contact the City prior to making its December 2022 representations (2) but "[s]urely, had [it] done so, it would have been told that things were not okay;" (3) and thus, whether it did or did not contact the City, Atkinson lied in December 2022, and appellee therefore failed to exercise reasonable care or competence. The foregoing is mere argument and speculation, generating at most mere surmise or suspicion and thus failing to generate a genuine issue of material fact. *See Clayton v. Wisener*, 169 S.W.3d 682, 684 (Tex. App.—Tyler 2005, no pet.) (providing argument from counsel is not evidence); *Raoger Corp. v. Myers*, 711 S.W.3d 206, 213 (Tex. 2025) (reviewing testimony qualified by "would" or "possibly" and providing "[s]peculative and conclusory testimony, by experts and lay witnesses alike, is incompetent and cannot support or defeat summary judgment").

### iii.    Justifiable Reliance

A party's entry into a contract prior to the complained-of misrepresentation does not establish justifiable reliance. *Van Marcontell v. Jacoby*, 260 S.W.3d 686, 692 (Tex. App.—Dallas 2008, no pet.). Here, the complained-of misrepresentations occurred on December 21, 2022. Appellant attested that it had customer contracts based on appellee's quoted pricing and that some forty percent of those contracts included long-term, fixed-pricing. Appellant argues it "had no reason to suspect that [appellee] was being untruthful when [appellee] assured [appellant] that everything was fine with the City" in December 2022. However, appellant's evidence fails to establish that any of its customer contracts were entered between December 21, 2022, (the date of the alleged misrepresentations) and January 21, 2023 (the date appellant was informed of appellee's closure). As a result, the evidence generates no more than mere surmise or suspicion that appellant justifiably relied on the December 2022 representations, thus failing to generate a genuine issue of material fact. *See Long*, 710 S.W.3d at 388; *Cobb*, 714 S.W.3d at 666. We find appellant failed to establish a genuine issue of material fact as to its claim for negligent misrepresentation. *See Belew*, 692 S.W.3d at 361.

### B.    Breach of Contract

A prevailing claimant on breach of contract must prove: (1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). Appellee asserted appellant can present no evidence supporting elements two, three,

9

and four. We find appellant failed to establish a genuine issue of material fact as to the third and fourth elements.[2]

Related to element three, Texas law provides "[a] breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Tabe v. Tex. Inpatient Consultants, LLLP,* 555 S.W.3d 382, 385 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *see Enron Oil & Gas Co. v. Joffrion*, 116 S.W.3d 215, 221 (Tex. App.—Tyler 2003, no pet.) (explaining "breach is determined by comparing the terms of a contract with the actions of the alleged breaching party"); *see also Beaty v. Homeowners of Am. Ins. Co.*, No. 01-23-00844-CV, 2025 WL 2446008, at *6 (Tex. App.—Houston [1st Dist.] Aug. 26, 2025, no pet.) (mem. op.) (same).[3] Even implied contract terms must be established by proving mutual assent (or meeting of the minds); however, mutual assent to implied terms may be inferred from evidence of the parties' course of dealing, conduct, communication, and the surrounding circumstances. *McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 392 (Tex. 2019); *Lindsey Constr., Inc. v. AutoNation Fin. Servs., LLC*, 541 S.W.3d 355, 363 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Angeles v. Brownsville Valley Reg'l Med. Ctr., Inc.*, 960 S.W.2d 854, 859 (Tex. App.—Corpus Christi–Edinburg 1997, pet. denied) ("An implied contract arises from the dealings of the parties, from which the facts show that the minds of the parties met on the terms of the contract without any

---

[2] Again, the parties do not purport to have a written contract. However, both parties agree that some kind of implied contractual relationship existed between them.

[3] To the extent contract terms are generally first ascertained under an analysis of element one and appellee did not move on element one, element three also requires the existence of contract terms that can be compared to the allegedly breaching conduct. Furthermore, Texas courts may decide issues and causes of action that are derivative or necessary to the resolution of the issue or cause of action moved upon in summary judgment. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011); *Jones v. Coppinger*, 642 S.W.3d 51, 64 (Tex. App.—El Paso 2021, no pet.).

legally expressed agreement thereto."). Courts determine mutual assent under an objective standard and do not analyze the parties' subjective states of mind. *Lindsey Constr., Inc.*, 541 S.W.3d at 363.

Here, appellant provided no argument or evidence that the parties' implied contract included a promise that appellee shall indefinitely keep its facility open with no interruption, regardless of action from third parties such as government authorities. *See id.* at 362 (finding no mutual assent related to an implied contract where the claimant asserted an auto company orally agreed to purchase a particular truck—that was already in the possession of the auto company for mechanical issues—at the price indicated on a trade-in appraisal generated by the auto company for the truck at issue and where the claimant dropped off two other trucks for trade-in and accepted three new trucks on lease); *Superior Phones, Ltd. v. Cherokee Commc'ns, Inc.*, 964 S.W.2d 325, 331 (Tex. App.—Corpus Christi–Edinburg 1998, pet. denied) (finding that where the former operator of a store entered an exclusive service contract with a pay phone provider, the subsequent operator of such store was under no exclusive contractual obligation to the pay phone provider despite accepting and negotiating royalty checks with the provider); *see also Molina Healthcare of Tex., Inc. v. ACS Primary Care Physicians Sw., PA*, No. 01-21-00727-CV, 2024 WL 3608192, at *10 (Tex. App.—Houston [1st Dist.] Aug. 1, 2024, no pet.) (mem. op.) (finding no meeting of the minds related to an implied contract where the evidence showed the parties never agreed to a specific price and rejecting the claimant's request for a finding that the parties agreed to a "reasonable" price).[4]

---

[4] While appellant relied on appellee's agreement that the parties had an implied-in-fact contract, appellee merely agreed the contract was as follows:

11

Related to element four, appellant merely asserts that it presented evidence before the trial court that "[appellant] sustained damages in excess of $90,000.00." Adams's affidavit describes appellant's damages in terms of its inability "to fulfill service contracts without incurring additional travel and other expenses" and the "lost . . . ability to provide service to customers, incurred additional expenses, and lost profitability." Appellant complains that it relied on service from appellee at the quoted price when entering long-term contracts with customers. Thus, appellant premises its damages claim on lost profits under contracts it had with its customers. Such lost profits are consequential damages. *Cherokee Cnty. Cogeneration Partners, L.P. v. Dynegy Mktg. & Trade*, 305 S.W.3d 309, 314 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that while lost profits on the contract at issue are direct damages, lost profits based on other contracts or relationships are consequential damages); *Cont'l Holdings, Ltd. v. Leahy*, 132 S.W.3d 471, 475 (Tex. App.—Eastland 2003, no pet.) (same); *see also Harris Cnty. v. Pulice Constr., Inc.*, No. 14-23-00818-CV, 2024 WL 4052762, at *6 (Tex. App.—Houston [14th Dist.] Sept. 5, 2024, no pet.) (mem. op.) (same); *DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 181 (Tex. App.—Fort Worth 2012, no pet.) (same).

To recover consequential damages, a claimant must prove the damages (1) are foreseeable and (2) to a degree of reasonable certainty. *Signature Indus. Servs., LLC v.*

---

[A] day-to-day agreement that if [appellant] delivered grease trap waste to [appellee] facilities, [appellant] would pay [appellee] its agreed fee of 18 cents per gallon of waste . . . . This agreement could be terminated at any time by either party. [Appellant] could stop delivering waste to [appellee] or [appellee] could close it (sic) gates and refuse to accept additional waste from [appellant] or any other grease waste hauler. That is a terminable at will contract.

Thus, appellee did not stipulate that the parties' contract included a term requiring appellee to remain open, notwithstanding third-party action such as from City authorities.

*Int'l Paper Co.*, 638 S.W.3d 179, 186, 187 (Tex. 2022). "A foreseeable loss may either follow predictably from the breach in the ordinary course of events or arise from special circumstances that the party in breach had reason to know." *Id.* at 186 (citation and quotations omitted). Here, appellant's evidence demonstrates that appellee, on occasion, unilaterally increased its pricing throughout the parties' business relationship. Given such, it was not predictable or reasonably known to the parties that appellee's failure to offer its services at a fixed price would cause it to absorb losses borne by appellant related to long-term, fixed-price contracts appellant entered with clients. Moreover, there is no evidence that appellee even knew that appellant entered long-term, fixed-price contracts with its clients. Thus, it was not predictable or reasonably known to appellee that if its facility ever closed, appellant would be unable to adjust its pricing. Therefore, appellant failed to present a genuine material fact issue as to foreseeability. *See Belew*, 692 S.W.3d at 361.

> Regarding reasonable certainty:
>
> Proof need not be exact, but neither can it be speculative. The losses must be susceptible of being established by proof to that degree of certainty which the law demands. If a loss was too remote and depended upon too many contingencies, and was too speculative in its character to have authorized its reception as evidence of any specific and certain loss, then it cannot be recovered . . . parties [must] provide objective facts, figures, or data to show their lost profits and other consequential damages.

*Id*. (citations and quotations omitted).

Here, appellant's expert merely attested that there was an interruption in appellant's business "during the period February – April, 2023" which "resulted in a loss of gross revenues circa $120,000.00" and "[m]arginal losses in an amount of not less than $90,000.00." There is no evidence regarding (1) how these figures were calculated,

13

(2) appellant's profitable financial state pre-closure of appellee's facility, or (3) how all business losses suffered by appellant during the three-month period arose from appellee's closure. Thus, appellant's damages evidence is merely conclusory and speculative, failing to provide objective facts, figures, or data. *See Parkway Dental Assocs., P.A. v. Ho & Huang Props., L.P.*, 391 S.W.3d 596, 609 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (finding appellant failed to generate a fact issue as to lost profits because, among other independent reasons, there was no testimony related to a "single calculation of lost-profits damages based on net profits"); *El Dorado Motors, Inc. v. Koch*, 168 S.W.3d 360, 367 (Tex. App.—Dallas 2005, no pet.) (finding expert opinion testimony assessing lost profits at $9 million dollars was insufficient to generate a fact issue because there was no evidence that the business was profitable before the complained-of act, and there was no evidence as to the basis of the opinions and conclusions such as objective facts, figures, or data from which the amount of lost profits could be ascertained); *W. Mktg., Inc. v. AEG Petroleum, LLC*, 616 S.W.3d 903, 922 (Tex. App.—Amarillo 2021), *opinion modified on reh'g*, 621 S.W.3d 88 (Tex. App.—Amarillo 2021, pet. denied) (finding appellant failed to present a prima facie case as to its $580,000 lost profits claim where the evidence was conclusory and failed to provide objective facts, figures, or data). Therefore, appellant failed to present a genuine material fact issue as to the reasonable certainty of lost profits. *See Belew*, 692 S.W.3d at 361.

## IV.    TRADITIONAL MOTION FOR SUMMARY JUDGMENT

On appeal, appellant argues that appellee was not entitled to traditional summary judgment on appellee's claim for suit on sworn account because appellant pled the affirmative defense of offset. Appellant asserts it is entitled to offset as an affirmative

14

defense solely because it has two meritorious claims, breach of contract and negligent misrepresentation. Because we affirm the trial court's grant of no-evidence summary judgment on appellant's two claims, appellant failed to present genuine material fact issue related to its affirmative defense of offset. *See Belew*, 692 S.W.3d at 361.

## V. CONCLUSION

We affirm the trial court's judgment.

JON WEST
Justice

Delivered and filed on the
18th day of December, 2025.