Kem Thompson Frost, Chief Justice *358 A construction company that leases trucks for use in its business alleged that a company that buys and sells trucks breached an implied-in-fact contract by failing to purchase a truck that the construction company had been leasing from a car-rental company. The plaintiff filed suit asserting claims for breach of contract, violations of the Texas Deceptive Trade Practices Act, negligent misrepresentation, and tortious interference with an existing contract, and seeking declaratory relief. The trial court granted the defendants' motion for a no-evidence and traditional summary judgment. The plaintiff now challenges the judgment in this appeal. We affirm.
I. FACTUAL AND PROCEDURAL BACKGROUND
Appellant/plaintiff Lindsey Construction, Inc. ("Lindsey Construction") was leasing three trucks from Enterprise Fleet Management, Inc. for use in Lindsey Construction's business. The engine of one of these trucks began making a loud clicking noise. Seeking an evaluation of this noise, Lindsey Construction brought the truck (the "Ram 7007") to the service department of appellees/defendants Auto Company XI, Inc. d/b/a AutoNation Chrysler Dodge Jeep Ram Spring and AutoNation Financial Services, LLC (collectively the "AutoNation Parties").[1] After Lindsey Construction dropped the Ram 7007 off, the AutoNation Parties informed Lindsey Construction that the Ram 7007 had a major internal failure and that the engine needed to be rebuilt or replaced. Curtis Lindsey, the President of Lindsey Construction told the AutoNation Parties that Lindsey did not want any repairs made to the Ram 7007 at that time and that he would pick up the truck as it was, with the engine disassembled.
Lindsey claims that when he arrived to retrieve the Ram 7007, an AutoNation sales representative told him that Lindsey Construction should trade-in the Ram 7007 for "a newer model from AutoNation" and that "Enterprise should handle the financing because Enterprise could 'get [Lindsey Construction] a better deal.' " Although Lindsey had not intended to trade-in the Ram 7007, he decided to consider this possibility based on the AutoNation Parties' diagnosis of the engine. At the time, Lindsey Construction already was leasing two other trucks from Enterprise (the "Other Two Trucks"). According to Lindsey, the leases on the Other Two Trucks were about to expire, and Lindsey brought them to the AutoNation Parties to be appraised when the Ram 7007 was appraised.
The AutoNation Parties completed an appraisal for each of the three trucks to determine their trade-in values. The AutoNation Parties presented Lindsey with a separate appraisal report for each truck. Each report stated an appraised value for the respective vehicle. The report for the Ram 7007 stated an appraised value of *359 $13,500, without any mention as to whether the value was based on the current condition of the Ram 7007's engine or whether the value was premised on the Ram 7007 having a rebuilt or replaced engine. In the reports the AutoNation Parties did not state that either of them would buy any of the trucks. The reports simply stated the appraised value of the vehicles.
According to Lindsey, a representative of the AutoNation Parties "presented [Lindsey] with three separate appraisal reports, one for each vehicle, and stated that the appraised value specified in each [report] was the price at which [the AutoNation Parties] would purchase each vehicle." Lindsey claims that the AutoNation Parties never said that the Ram 7007's appraisal was based on the truck having a repaired engine or that the AutoNation Parties' purchase of the Ram 7007 would be contingent on the engine being repaired. Lindsey Construction alleges that the AutoNation Parties represented that they would buy each truck at the amount of the appraised value and that, in reliance upon these representations, Lindsey Construction decided to trade-in the three vehicles for newer models.
Lindsey Construction then "traded-in" the Ram 7007 and the Other Two Trucks, thus terminating the leases of these three trucks from Enterprise. Lindsey Construction leased three new trucks from Enterprise, which bought the three new vehicles from the AutoNation Parties. Lindsey Construction picked up the three new leased trucks on or about November 22, 2013. The pricing of the new-truck leases was premised on the AutoNation Parties buying the Ram 7007 and the Other Two Trucks at the appraised values stated in the appraisal reports. Though the AutoNation Parties purchased the Other Two Trucks at the appraised values stated in the appraisal reports, the AutoNation Parties did not buy the Ram 7007 from Enterprise.
Several months later Lindsey Construction received a letter from Enterprise stating that the AutoNation Parties had not purchased the Ram 7007 from Enterprise and that if the AutoNation Parties did not buy this truck, Lindsey Construction would have to pay more for the lease of the truck that replaced the Ram 7007. Despite Lindsey Construction's demand that the AutoNation Parties buy the Ram 7007 from Enterprise for $13,500, the AutoNation Parties refused to do so.
Lindsey Construction sued the AutoNation Parties, asserting claims for breach of contract, violations of the Deceptive Trade Practices Act, negligent misrepresentation, and tortious interference with an existing contract. The AutoNation Parties filed a summary-judgment motion seeking a summary judgment based on various traditional and no-evidence grounds. Lindsey Construction later amended its petition to seek declaratory relief and to add Enterprise as a defendant. The trial court granted the AutoNation Parties' summary-judgment motion, and later severed Lindsey Construction's claims against the AutoNation Parties to make the judgment final.
II. ISSUES AND ANALYSIS
On appeal, Lindsey Construction asserts that the trial court erred in granting summary judgment as to each challenged claim. Lindsey Construction argues that the trial court erred in granting summary judgment on the no-evidence grounds because an adequate time for discovery had not yet passed when the trial court granted summary judgment. Lindsey Construction also asserts that the trial court erred in granting summary judgment as to Lindsey Construction's requests for declaratory relief because the AutoNation Parties did *360 not challenge these requests in any of their summary-judgment grounds.
In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. M.D. Anderson Hosp. & Tumor Inst. v. Willrich , 28 S.W.3d 22, 23 (Tex. 2000). In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary-judgment evidence raising a genuine issue of fact as to the essential elements attacked in the no-evidence motion. Johnson v. Brewer & Pritchard, P.C. , 73 S.W.3d 193, 206-08 (Tex. 2002). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. Mack Trucks, Inc. v. Tamez , 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. Goodyear Tire & Rubber Co. v. Mayes , 236 S.W.3d 754, 755 (Tex. 2007). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).
A. Did the trial court abuse its discretion by determining that there had been an adequate time for discovery?
Lindsey Construction asserts the trial court erred in granting a no-evidence summary judgment because an adequate time for discovery had not passed when the trial court granted summary judgment. See Tex. R. Civ. P. 166a(i) ("After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial"). On appeal, Lindsey Construction complains that it should have been afforded the opportunity to seek further discovery from Enterprise and that Lindsey Construction should have been allowed to complete its deposition of Joseph Simon, who was an "AutoNation sales representative" when Lindsey Construction brought the Ram 7007 in for diagnostic testing. When a party contends it has not had an adequate opportunity for discovery before a summary-judgment hearing or that there has not been adequate time for discovery under Texas Rule of Civil Procedure 166a(i), the party must file either an affidavit explaining the need for further discovery or a verified motion for continuance. See Tenneco, Inc. v. Enter. Prods., Co. , 925 S.W.2d 640, 647 (Tex. 1996) ; Kaldis v. Aurora Loan Servs. , 424 S.W.3d 729, 736 (Tex. App.-Houston [14th Dist.] 2014, no pet.).
In Curtis Lindsey's summary-judgment affidavit, he asserted that Lindsey Construction had not had an adequate time for discovery and that Lindsey Construction had not been afforded the opportunity to take any depositions. After Lindsey Construction filed this summary-judgment affidavit, and before the trial court granted summary judgment on October 22, 2015, Lindsey Construction took three depositions and supplemented its summary-judgment response with deposition excerpts. Lindsey Construction did not file a verified motion for continuance, nor did it file an *361 affidavit explaining that it needed to conduct further discovery on Enterprise or that Lindsey Construction needed to complete its deposition of Joseph Simon. We presume, without deciding, that Lindsey Construction preserved error regarding its appellate complaint.
In deciding whether the trial court permitted an adequate time for discovery, we consider the following factors: (1) the nature of the case, (2) the nature of the evidence necessary to controvert the no-evidence motion, (3) the length of time the case was active, (4) the amount of time the no-evidence motion was on file, (5) whether the movant had requested stricter deadlines for discovery, (6) the amount of discovery that already had taken place, and (7) whether the discovery deadlines in place were specific or vague. See McInnis v. Mallia , 261 S.W.3d 197, 201 (Tex. App.-Houston [14th Dist.] 2008, no pet.). We review a trial court's determination that there has been an adequate time for discovery on a case-by-case basis, under an abuse-of-discretion standard. See ids="8207199" index="8" url="https://cite.case.law/sw3d/261/197/#p201">id.
Lindsey Construction filed this suit against the AutoNation Parties on June 13, 2014, and served requests for admissions, requests for production, and interrogatories on the AutoNation Parties in August 2014. The AutoNation Parties filed their summary-judgment motion on March 5, 2015, almost nine months after Lindsey Construction filed suit. In its summary-judgment response, Lindsey Construction asserted that it needed to take depositions. The AutoNation Parties passed the hearing that they had set on their summary-judgment motion in March 2015. In May 2015, they deposed Curtis Lindsey. The same month, Lindsey Construction took three depositions. Lindsey Construction supplemented its summary-judgment response with excerpts from two of these depositions.
The AutoNation Parties reset the hearing on their summary-judgment motion to October 20, 2015, and two days after the hearing the trial court granted the motion. At the time the trial court granted the motion, the trial setting had been continued several times, and the case was set for trial on February 22, 2016. The trial court granted summary judgment more than sixteen months after Lindsey Construction filed suit and more than seven months after the AutoNation Parties filed the summary-judgment motion. Under the applicable standard of review, we conclude that the trial court did not abuse its discretion in impliedly determining that an adequate time for discovery had passed when the trial court granted summary judgment. See Zimmerman v. Farias , No. 14-12-00531-CV, 2013 WL 5026248, at *2-3 (Tex. App.-Houston [14th Dist.] Sept. 12, 2013, no pet.) (mem. op.).
B. May this court affirm the summary judgment based on the statute of frauds in Texas Business and Commerce Code section 2.201 ?
Subject to exceptions not raised by the facts of this case, a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by that party's authorized agent or broker. See Tex. Bus. & Comm. Code § 2.201 (West, Westlaw through 2017 1st C.S.). On appeal, the AutoNation Parties assert the record contains no evidence of a writing sufficient to satisfy the statute-of-frauds requirements of section 2.201 of the Texas Business and Commerce Code and that this court may affirm the summary judgment based on this statute.
*362 The statute of frauds is an affirmative defense that that the AutoNation Parties had the burden to plead and prove. See Duradril, L.L.C. v. Dynomax Drilling Tools, Inc. , 516 S.W.3d 147, 158 (Tex. App.-Houston [14th Dist.] 2017, no pet.). Though the AutoNation Parties pleaded this defense in their answer, they did not assert this defense in their summary-judgment motion. The AutoNation Parties' no-evidence summary-judgment grounds challenging the essential elements of Lindsey Construction's claims do not provide a basis for granting summary judgment based on the statute of frauds, which is an affirmative defense that may not be raised by the AutoNation Parties in a no-evidence summary-judgment ground. See Haven Chapel United Methodist Church v. Leebron , 496 S.W.3d 893, 904 (Tex. App.-Houston [14th Dist.] 2016, no pet.). The AutoNation Parties did not expressly present the statute of frauds as a ground in their summary-judgment motion; therefore, we may not affirm the trial court's judgment based on the statute of frauds. See Henkel v. Norman , 441 S.W.3d 249, 251 n.1 (Tex. 2014) ; Stiles v. Resolution Trust Corp. , 867 S.W.2d 24, 26 (Tex. 1993).
C. Did the trial court err in granting summary judgment as to the breach-of-contract claims?
Lindsey Construction asserts that the trial court erred in granting summary judgment as to its breach-of-contract claims against the AutoNation Parties. Though Lindsey Construction consistently has asserted that its breach-of-contract claims are based on an implied-in-fact contract, Lindsey Construction has not been consistent in describing the nature of the alleged implied-in-fact contract. In its live pleading, Lindsey Construction alleged that Lindsey Construction, Enterprise, and the AutoNation Parties are all parties to an alleged contract, under which (1) the AutoNation Parties agreed to purchase the Ram 7007 for $13,500; and (2) Enterprise agreed to apply credit for the gain from the purchase to Lindsey Construction's lease of the newer truck replacing the Ram 7007. Given that Enterprise was the owner of the Ram 7007, it might make sense that Enterprise would be a party to the alleged implied-in-fact contract.
In its summary-judgment response and the supplement to that response, Lindsey Construction asserts that in the implied contract, the AutoNation Parties agreed to purchase the Ram 7007 for $13,500, without any mention that Enterprise is a party to the contract.[2] On appeal, Lindsey Construction does not specifically refer to Enterprise as a party to the alleged implied-in-fact contract, though Lindsey Construction refers at various times to the "Parties" to the contract, without defining this term or stating which parties it alleges are parties to this contract. Regardless of whether Enterprise is a party to the alleged contract, we note that Lindsey Construction contends that the AutoNation Parties and Lindsey Construction were parties to an implied-in-fact contract, under which the AutoNation Parties agreed that they would purchase the Ram 7007 for $13,500 and that the AutoNation Parties breached the contract by not purchasing the Ram 7007. No appraisal report or other writing in the summary-judgment evidence contains a statement that the AutoNation Parties will purchase the Ram 7007 for $13,500. Lindsey Construction relies on Curtis Lindsey's affidavit testimony *363 as to oral statements by a representative of the AutoNation Parties "that the appraised value specified in each [report] was the price at which [the AutoNation Parties] would purchase each vehicle." Lindsey Construction asserts that it relied on these oral statements and the appraisal reports in agreeing with Enterprise to lease the three new trucks.
In their summary-judgment motion, the AutoNation Parties asserted various grounds, including that there is no evidence that the parties mutually assented to the terms of the alleged implied-in-fact contract. Lindsey Construction argues that the facts and circumstances shown by the summary-judgment record, including the conduct of the AutoNation Parties and Lindsey Construction, raise a genuine fact issue as to whether courts should imply a mutual intention to enter into a contract under which the AutoNation Parties agreed to purchase the Ram 7007 for $13,500.
A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by the parties that recognizes the existence of such a contract. See Tex. Bus. & Comm. Code § 2.204(a) (West, Westlaw through 2017 1st C.S.). In cases involving implied contracts, mutual intent is inferred from the circumstances. Id. In determining whether mutual assent is present, courts consider the communications between the parties, the parties' conduct, any course of dealing between the parties, and the surrounding circumstances. See Parker Drilling Co. v. Romfor Supply Co. , 316 S.W.3d 68, 75 (Tex. App.-Houston [14th Dist.] 2010, pet. denied). Courts determine whether the parties achieved a meeting of the minds using the objective standard of what the parties said and did, rather than the parties' subjective states of mind. See ids="7321745" index="16" url="https://cite.case.law/sw3d/316/68/#p75">id.
Even presuming that a representative of the AutoNation Parties told Lindsey "that the appraised value specified in each [report] was the price at which [the AutoNation Parties] would purchase each vehicle," Enterprise, not Lindsey Construction, owned the trucks, and the representative did not say that the AutoNation Parties agreed to purchase each truck at the value specified in each report. Even if the AutoNation Parties stated the price at which they were willing to buy each truck, these statements were made to Lindsey Construction, not to Enterprise, the owner of the Ram 7007 and the Other Two Trucks. Neither the AutoNation Parties' statements to Lindsey nor the conduct of the parties shows that the AutoNation Parties agreed to purchase the Ram 7007 for $13,500.
Lindsey Construction asserts on appeal that it delivered the Ram 7007 and the Other Two Trucks to the AutoNation Parties and that the AutoNation Parties did not indicate that the Ram 7007 was not part of "the trade-in deal." As to the Ram 7007, this assertion is not supported by the summary-judgment evidence. The summary-judgment evidence reflects that when Lindsey Construction decided to consider leasing three new trucks from Enterprise, Lindsey Construction delivered only the Other Two Trucks to the AutoNation Parties, because the Ram 7007 already was in the AutoNation Parties' possession due to the diagnostic work the AutoNation Parties had performed in connection with the Ram 7007's engine issues.
The agreement of Enterprise and Lindsey Construction to terminate Lindsey Construction's lease of the Ram 7007 and the Other Two Trucks and to have Lindsey Construction lease three new trucks from Enterprise (which Enterprise purchased from the AutoNation Parties), and the AutoNation Parties' purchase of *364 the Other Two Trucks at the value stated in the respective appraisal report do not constitute objective circumstances giving rise to an implied assent by the AutoNation Parties to a contract under which they agreed to purchase the Ram 7007 for $13,500.
Under the applicable standard of review, we conclude that (1) the summary-judgment evidence does not raise a genuine fact issue as to the assent of either of the AutoNation Parties to the terms of a contract under which the AutoNation Parties agreed that they would purchase the Ram 7007 for $13,500, and (2) the summary-judgment evidence does not raise a genuine fact issue as to whether courts should imply mutual assent to enter into a contract under which the AutoNation Parties agreed to purchase the Ram 7007 for $13,500, based on the parties' conduct and the surrounding circumstances shown by the summary-judgment evidence. See Parker Drilling Co. , 316 S.W.3d at 75-77 (concluding that the evidence was legally insufficient to support a finding of mutual assent by the parties to an alleged implied-in-fact contract). Thus, the trial court did not err in granting summary judgment as to the breach-of-contract claims on the ground that there is no evidence that the parties mutually assented to the terms of the alleged implied-in-fact contract.[3] ibr.US_Case_Law.Schema.Case_Body:v1">See id.
D. Did the trial court err in granting summary judgment as to the claims based on alleged violations of the Deceptive Trade Practices Act?
In its live pleading, Lindsey Construction alleged that the AutoNation Parties violated the Deceptive Trade Practices Act ("DTPA") by (1) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and (2) misrepresenting the authority of a salesman, representative, or agent to negotiate the final terms of a consumer transaction. See Tex. Bus. & Comm. Code § 17.46(b)(12), (14) (West, Westlaw through 2017 1st C.S.). In their summary-judgment motion, the AutoNation Parties asserted that (1) there is no evidence that the AutoNation Parties represented that an agreement conferred or involved rights, remedies, or obligations that it did not have or involve, or that were prohibited by law; and (2) there is no evidence that the AutoNation Parties misrepresented the authority of a salesman, representative, or agent to negotiate the final terms of a consumer transaction. The trial court impliedly granted summary judgment on these grounds.
As to the first alleged DTPA violation, Lindsey Construction argues on appeal that the summary-judgment evidence raised a fact issue as to whether the AutoNation Parties' sales representative induced Lindsey Construction into leasing the new trucks by failing to disclose that the AutoNation Parties' purchase of the Ram 7007 was conditioned upon the engine being repaired. Lindsey Construction asserts that the AutoNation Parties' sales representative falsely represented that the AutoNation Parties would purchase the Ram 7007 despite the damaged engine and that the representative failed to disclose that the vehicle's appraisal report was based on a repaired engine. According to Lindsey Construction, by failing to disclose that the AutoNation Parties' purchase of the Ram 7007 was conditioned on the engine being repaired, the AutoNation Parties *365 misrepresented the rights and obligations of the agreement to purchase the Ram 7007, in violation of section 17.46(b)(12) of the Business and Commerce Code. See id. § 17.46(b)(12).
Under the plain meaning of the language in section 17.46(b)(12) of the Business and Commerce Code, it would appear that, to violate this subsection an affirmative misrepresentation, rather than a failure to disclose, is required. See id. Lindsey Construction has not cited any cases in which a court holds that a failure to disclose a material fact about the rights, remedies, or obligations conferred by an agreement suffices to establish a violation of this subsection. Nonetheless, we presume, without deciding, that a failure to disclose may be sufficient to show a violation of this subsection. Even under this presumption, the alleged failures to disclose or misrepresentations raised by Lindsey Construction concern the alleged contract under which the AutoNation Parties agreed to purchase the Ram 7007 for $13,500, and we already have concluded that the summary-judgment evidence does not raise a genuine fact issue as to a prerequisite for the formation of this alleged contract. See 2001 Trinity Fund, LLC v. Carrizo Oil & Gas, Inc. , 393 S.W.3d 442, 449 (Tex. App.-Houston [14th Dist.] 2012, pet. denied).
Because the summary-judgment evidence does not raise a genuine fact issue as to the existence of the alleged agreement, the summary-judgment evidence likewise does not raise a genuine fact issue as to whether either of the AutoNation Parties represented that the alleged agreement conferred or involved rights, remedies, or obligations which it did not have or involve, or which were prohibited by law. See Guardian Life Ins. Co. v. Kinder , 663 F.Supp.2d 544, 552 (S.D. Tex. 2009) (applying DTPA).
As to the AutoNation Parties' alleged violation of section 17.46(b)(14) by misrepresenting the authority of a salesman, representative, or agent to negotiate the final terms of a consumer transaction, Lindsey Construction asserts on appeal that the AutoNation sales representative whom Lindsey Construction claims made an offer to purchase the Ram 7007 and the Other Two Trucks, "apparently did not have authority to do the same." Lindsey Construction does not cite any summary-judgment evidence in support of this proposition.
Considering all the evidence in the light most favorable to Lindsey Construction, crediting evidence favorable to Lindsey Construction if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not, we conclude that the summary-judgment proof does not raise a genuine fact issue as to whether the AutoNation Parties misrepresented the authority of a salesman, representative, or agent to negotiate the final terms of a consumer transaction. See Tex. Bus. & Comm. Code § 17.46(b)(14) ; Mack Trucks, Inc. , 206 S.W.3d at 582-84. Thus, the trial court did not err in granting a no-evidence summary judgment as to Lindsey Construction's claims based on alleged DTPA violations.[4]
E. Did the trial court err in granting summary judgment as to the negligent-misrepresentation claims?
Lindsey Construction argues on appeal that the trial court erred in granting summary judgment as to its negligent- *366 misrepresentation claims based on the AutoNation Parties' alleged representations that they would purchase the Ram 7007 despite its damaged engine, the AutoNation Parties' alleged representations that they would purchase the Ram 7007 for $13,500, and the AutoNation Parties' alleged failure to disclose that the purchase of the Ram 7007 was contingent upon the engine being repaired or that Lindsey Construction would be held liable if the AutoNation Parties failed to purchase the Ram 7007. We presume, without deciding, that a negligent-misrepresentation claim may be based on a failure to disclose rather than an affirmative misrepresentation.
The AutoNation Parties asserted that there is no evidence of each of the essential elements of the negligent-misrepresentation claims. The essential elements of a claim for negligent misrepresentation are (1) the defendant made a representation in the course of the defendant's business, or in a transaction in which the defendant had a pecuniary interest; (2) the defendant supplied "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. See Federal Land Bank Ass'n of Tyler v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991). The term "false information," as used in the elements of a negligent-misrepresentation claim, means a misstatement of existing fact, not a promise of future conduct. See Mañon v.Solis , 142 S.W.3d 380, 388 (Tex. App.-Houston [14th Dist.] 2004, pet. d enied); Allied Vista, Inc. v. Holt, 987 S.W.2d 138, 141 (Tex. App.-Houston [14th Dist.] 1999, pet. denied).
We presume for the sake of argument that (1) the AutoNation Parties represented that they would purchase the Ram 7007 despite its damaged engine; (2) the AutoNation Parties represented they would purchase the Ram 7007 for $13,500, (3) the AutoNation Parties' failed to disclose that the purchase of the Ram 7007 was contingent upon the engine being repaired; (4) the AutoNation Parties' failed to disclose that Lindsey Construction would be held liable if the AutoNation Parties failed to purchase the Ram 7007; and (5) these failures to disclose are deemed to be representations in the analysis of the negligent-misrepresentation claims. Even under these presumptions, the purported representations constitute promises of future conduct rather than misstatements of existing fact. Therefore, none of this alleged conduct may form the basis of a viable negligent-misrepresentation claim. See Mañon , 142 S.W.3d at 388; Allied Vista, Inc., 987 S.W.2d at 141. Lindsey Construction has not shown that the trial court erred in granting a no-evidence summary judgment as to the negligent-misrepresentation claims. See Mañon , 142 S.W.3d at 388; Allied Vista, Inc., 987 S.W.2d at 141.[5]
F. Did the trial court err in granting summary judgment as to the claims for tortious interference with an existing contract?
In its live pleading, Lindsey Construction alleged claims for tortious interference with an existing contract based on an allegation that the AutoNation Parties willfully and intentionally interfered with the lease agreement between Enterprise and Lindsey Construction for the Ram 7007 by offering to purchase the Ram 7007 for $13,500 and then failing to purchase *367 the Ram 7007 after Lindsey Construction had leased a new truck to replace the Ram 7007. An essential element of a claim for tortious interference with an existing contract is that the defendant's act of interference must be willful and intentional. See Dagley v. Haag Engineering Co. , 18 S.W.3d 787, 793 (Tex. App.-Houston [14th Dist.] 2000, no pet.). To be intentional in the context of a claim for tortious interference with an existing contract, the defendant must intend its act to interfere with the contract. See Sw. Bell Tel. Co. v. John Carlo Texas, Inc., 843 S.W.2d 470, 472 (Tex. 1992).
In their summary-judgment motion, the AutoNation Parties asserted that there is no evidence that the alleged act of interference was willful and intentional. In its summary-judgment response, Lindsey Construction stated that the AutoNation Parties had an obligation to purchase the Ram 7007 as agreed and that their failure to do so constituted interference with Lindsey Construction's lease agreement for the new truck that replaced the Ram 7007. In the response, Lindsey Construction did not assert that there was a fact issue as to alleged tortious interference with its lease agreement for the Ram 7007.[6] Lindsey Construction stated that the only way for the AutoNation Parties to avoid liability for tortious interference with an existing contract is to prove that they were within their contractual rights not to purchase the Ram 7007 for $13,500. In the supplement to its summary-judgment response, Lindsey Construction did not mention its claims for tortious interference with an existing contract. In neither the response nor the supplement does Lindsey Construction mention the requirement that the defendant's act of interference must be willful and intentional or point to evidence allegedly raising a fact issue as to this requirement. Under the applicable standard of review, we conclude that Lindsey Construction did not point out summary-judgment evidence raising a genuine issue of fact as to the essential element that that the alleged act of interference was willful and intentional. See Johnson , 73 S.W.3d at 206-08 ; John Carlo Texas, Inc., 843 S.W.2d at 472 ; Dagley , 18 S.W.3d at 794 ; Moron v. Computer Curriculum Corp. , No. 13-03-052-CV, 2004 WL 1797583, at *4 (Tex. App.-Corpus Christi Aug. 12, 2004, no pet.) (mem. op.). Lindsey Construction has not shown that the trial court erred in granting a no-evidence summary judgment as to its claims for tortious interference with an existing contract.[7]
G. Did the trial court err in granting summary judgment as to the requests for declaratory relief?
After the AutoNation Parties filed their summary-judgment motion, Lindsey Construction amended its petition to add requests for declaratory relief as to various matters relating to the transactions made the bases of this suit. The trial court granted summary judgment and dismissed all of Lindsey Construction's claims. On appeal, Lindsey Construction asserts that the trial court erred in granting summary judgment as to its requests for declaratory relief because the AutoNation Parties did not challenge these requests in any of their summary-judgment grounds. Because the requests for declaratory relief *368 are derivative of Lindsey Construction's other claims and because the trial court did not err in granting summary judgment as to the other claims, Lindsey Construction's argument does not provide a basis for reversing the trial court's judgment. See Melendez v. Citimortgage, Inc. , No. 03-14-0029-CV, 2015 WL 5781103, at *4 (Tex. App.-Austin Oct. 2, 2015, pet. denied) (mem. op.).
III. CONCLUSION
The trial court did not abuse its discretion in impliedly determining that an adequate time for discovery had passed when the trial court granted summary judgment. The trial court did not err in granting summary judgment as to the breach-of-contract claims on the ground that there is no evidence that the parties mutually assented to the terms of the alleged implied-in-fact contract. Nor did the trial court err in granting a no-evidence summary judgment as to Lindsey Construction's claims based on alleged DTPA violations. Lindsey Construction has not shown that the trial court erred in granting a no-evidence summary judgment as to the negligent-misrepresentation claims or as to the claims for tortious interference with an existing contract. We may affirm the dismissal of Lindsey Construction's requests for declaratory relief because these requests are derivative of Lindsey Construction's other claims and because the trial court did not err in granting summary judgment as to the other claims. Accordingly, we overrule all of Lindsey Construction's appellate challenges and affirm the trial court's judgment.

Lindsey Construction makes most of its allegations against both Auto Company XI, Inc. d/b/a AutoNation Chrysler Dodge Jeep Ram Spring and AutoNation Financial Services, LLC, without distinguishing between the two companies. The AutoNation Parties assert that AutoNation Financial Services, LLC has no connection with the occurrence made the basis of this suit. We need not resolve this issue to dispose of this appeal. In this opinion, we refer to both AutoNation Parties when Lindsey Construction has alleged that both are involved, even though only one company actually may have been involved.

Lindsey Construction filed its summary-judgment response before its Second Amended Petition bringing Enterprise into the lawsuit and alleging that Enterprise was a party to the implied contract. But, Lindsey Construction filed its supplement to the summary-judgment response after it filed this amended pleading.

Based on this conclusion, we need not and do not address whether the trial court's summary judgment as to the breach-of-contract claims may be affirmed based on any of the other summary-judgment grounds in the motion.

Based on this conclusion, we need not and do not address whether the trial court's summary judgment as to the DTPA claims may be affirmed based on any of the traditional summary-judgment grounds.

Based on this conclusion, we need not and do not address whether the trial court's summary judgment as to the negligent-misrepresentation claims may be affirmed based on any of the traditional summary-judgment grounds.

In the response, Lindsey Construction also responded to a traditional summary-judgment ground the AutoNation Parties had asserted.

Based on this conclusion, we need not and do not address whether the trial court's summary judgment as to the claims for tortious interference with an existing contract may be affirmed based on any of the traditional summary-judgment grounds.