**Reversed and Rendered and Opinion filed November 20, 2018.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-13-00694-CV

_____

**FIRST BANK, Appellant**

**V.**

**RICHARD BRUMITT, Appellee**

_____

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-64498**

_____

# O P I N I O N

In this lender-liability case, the owner of a company that sought to sell its stock to another company sued the would-be buyer's bank asserting claims for (1) breach of contract as an alleged third-party beneficiary and (2) negligent misrepresentation. The trial court rendered judgment in favor of the owner on both

claims.  In an earlier appeal, this court concluded as a matter of law that the owner could not recover under his negligent-misrepresentation claim, but we affirmed the trial court's judgment as to the owner's breach-of-contract claim.  The Supreme Court of Texas reversed this court's judgment, rendered judgment for the bank on the owner's breach-of-contract claim, and remanded the owner's negligent-misrepresentation claim to this court.  On remand, we conclude that the claim asserted as a negligent-misrepresentation claim sounds in contract.  We reverse the trial court's judgment as to the owner's claims and render judgment that the owner take nothing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Don Oprea, President of DTS Group, LLP approached appellant/defendant First Bank seeking to obtain a United States Small Business Administration ("SBA") loan to provide funds to be used to purchase the stock of two companies from appellee/intervenor Richard Brumitt.  Oprea, who had a banking relationship with First Bank, met with Tim Duffy, who then was the president of First Bank's SBA loan group.  Later, DTSG[1] decided that it would seek to purchase the stock of only one of these companies—Southway Systems, Inc.  According to Oprea, on numerous occasions, First Bank promised to fund a loan for the purchase of the stock, with the proposed loan amount varying.  According to Oprea, Duffy made the promises in oral statements, in emails, and in three commitment letters (collectively the "Letters").  First Bank never funded any loan to DTSG.  DTSG did not obtain a loan

---

[1] DTSG, Ltd., a Texas limited partnership was formed on July 23, 2008, after the occurrence of many of the events on which this suit is based.  Nonetheless, DTSG, Ltd. filed this suit in the trial court as successor in interest to DTS Group, LLP; and the distinction between these entities is not material to our analysis in this opinion.  So, for ease of reference, in this opinion both DTS Group, LLP and DTSG, Ltd are referred to as "DTSG."

2

from any other lender nor purchase any of Southway's stock. And, Brumitt never sold the Southway stock.

DTSG sued First Bank asserting various claims, including negligent misrepresentation and breach of contract. Brumitt intervened and asserted various claims against First Bank, including negligent misrepresentation and breach of contract as a third-party beneficiary of the alleged contracts between DTSG and First Bank. Following a trial, the jury answered liability and damages questions in favor of DTSG and Brumitt based on each claimant's breach-of-contract and negligent-misrepresentation claims. The jury also found the amount of reasonable and necessary attorney's fees for DTSG and Brumitt. After finding that the harm to DTSG and Brumitt resulted from First Bank's gross negligence, the jury assessed exemplary damages against First Bank and in favor of DTSG and Brumitt.

The trial court denied First Bank's motion for judgment notwithstanding the verdict and rendered judgment on the jury's verdict, awarding each claimant actual damages and attorney's fees based upon the breach-of-contract claim, actual damages based upon the negligent-misrepresentation claim, and exemplary damages.

First Bank appealed to this court and asserted various issues challenging the trial court's judgment. We looked to the Supreme Court of Texas's opinion in *Basic Capital Management v. Dynex Commercial* for guidance in resolving the third-party-beneficiary issue. *See* 348 S.W.3d 894, 899–901 (Tex. 2011); *First Bank v. DTSG, Ltd.*, 472 S.W.3d 1, 16–20 (Tex. App.—Houston [14th Dist.] 2015), *rev'd*, 519 S.W.3d 95, 99 (Tex. 2017). In *Basic Capital*, the supreme court stated that the written, unambiguous contract "and the undisputed evidence regarding its negotiation and purpose, establish that [the third parties] were third-party

beneficiaries." *Basic Capital Management*, 348 S.W.3d at 901 (footnote omitted). We concluded that the *Basic Capital* decision had changed existing law, under which courts had been required to consider only the language of a written, unambiguous contract in determining whether the contracting parties intended a third party to benefit directly from the contract. *See Basic Capital Management*, 348 S.W.3d at 899–901; *First Bank*, 472 S.W.3d at 16–20. Based on the *Basic Capital* case, we ruled that the trial court did not err in overruling First Bank's objection that no third-party-beneficiary issue should be submitted to the jury because the law limits the third-party-beneficiary analysis to the four corners of each of the Letters and because construction of the unambiguous Letters presented a matter of law for the court. *See First Bank*, 472 S.W.3d at 16–20.

We concluded that (1) the trial court abused its discretion by allowing Brumitt's lead trial counsel to testify as an expert as to DTSG's attorney's fees; (2) none of First Bank's other arguments challenging the breach-of-contract claims of DTSG or Brumitt had merit; and (3) DTSG and Brumitt may not recover under a negligent-misrepresentation claim because, as a matter of law, neither party showed an injury independent from economic losses recoverable under a breach-of-contract claim. We modified the trial court's judgment to delete the award of (a) attorney's fees to DTSG, and (b) negligent-misrepresentation damages and exemplary damages to DTSG and Brumitt, and we affirmed the trial court's judgment as modified. *See id.* at 4–5.

First Bank filed a petition for review in the Supreme Court of Texas seeking review of this court's judgment as to the claims of both DTSG and Brumitt. Before the high court ruled on First Bank's petition, First Bank and DTSG settled all issues between them. Under this settlement and at the request of First Bank and DTSG,

4

the Supreme Court of Texas dismissed with prejudice First Bank's petition for review as to DTSG.

The Supreme Court of Texas granted First Bank's petition for review as to Brumitt's claims against First Bank. The high court stated that in determining whether the contracting parties intended a third party to benefit directly from the contract, courts must consider only the contract's language. *See First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017). The Supreme Court of Texas determined that the *Basic Capital* court did not change this legal rule and that the *Basic Capital* court considered evidence regarding the "attending circumstances" to determine who the third-party beneficiaries were. *See id*. at 108–109. The high court concluded that the *Basic Capital* court had considered evidence of surrounding circumstances to inform the construction of the unambiguous contract and that the court had not used this evidence to add to the terms of the contract. *See id*. at 110. The supreme court concluded that "the agreement between First Bank and DTSG does not clearly and fully express the parties' intent to make Brumitt a third-party beneficiary, and the trial court erred by submitting that issue to the jury and by permitting the jury to consider extrinsic evidence to add to the parties' agreement." *Id*. at 111. The high court reversed this court's judgment, rendered judgment for First Bank on Brumitt's breach-of-contract claim, and remanded the case to this court to consider the trial court's award of actual damages to Brumitt based on the jury's negligent-misrepresentation findings and the award of exemplary damages to Brumitt based on the jury's finding that the harm to Brumitt resulted from First Bank's gross negligence. *See id*. at 112–13.

## II. ANALYSIS

### A. Does Brumitt's negligent-misrepresentation claim sound in contract?

In part of its fourth issue, First Bank asserts that Brumitt's negligent-misrepresentation claim is subsumed by his breach-of-contract claim. First Bank preserved error on this complaint in the trial court. By making this argument, First Bank effectively asserts that Brumitt's claim sounds in contract and does not sound in the tort of negligent misrepresentation. *See Shioleno Indus. v. Columbia Medical Center of Arlington Subsidiary, L.P.*, No. 2-06-016-CV, 2007 WL 805563, at *5 (Tex. App.—Fort Worth Mar. 15, 2007, pet. denied) (stating that if a negligence claim is subsumed by a contract claim then the action sounds in contract) (mem. op.).

In his contract claim, Brumitt sought to recover economic damages that allegedly resulted from First Bank's failure to comply with its alleged contractual obligation to provide a loan to DTSG to be used to fund DTSG's purchase of Brumitt's Southway stock. Through his negligent-misrepresentation claim Brumitt sought to recover based on evidence of many promises by First Bank that it would close and fund the Loan to DTSG on a specific date in the future, including a promise made by Duffy to Brumitt in person that "he was going to get it done" and that Brumitt and Oprea both would be happy. In his appellate brief, Brumitt states that the basis for his negligent-misrepresentation claim "is that the bank negligently misrepresented that the bank would close and fund the loan in a timely fashion on certain dates." Brumitt asserts that he justifiably relied on these alleged negligent misrepresentations to his detriment and that First Bank's delay caused a "cascade effect" that harmed Brumitt's company.

In proffering evidence regarding the damages he allegedly sustained, Brumitt

6

did not differentiate between economic losses suffered as a result of First Bank's failure to comply with its alleged contractual obligation to close and fund the loan and economic losses caused by First Bank's alleged negligent misrepresentations. In the closing arguments Brumitt's counsel did not distinguish between First Bank's acts that allegedly constituted breaches of contract and First Bank's acts that allegedly constituted negligent misrepresentations, and Brumitt's counsel urged the same damage amount for both of Brumitt's claims.

A party's common-law duty not to engage in a negligent misrepresentation encompasses a duty not to make a representation that supplies false information about an existing fact under certain circumstances. *See Lindsey Construction, Inc. v. AutoNation Financial Servs.*, 541 S.W.3d 355, 366 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Mañon v. Solis*, 142 S.W.3d 380, 388 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). This common-law duty does not encompass a duty not to make false promises of future conduct. *See Lindsey Construction, Inc.*, 541 S.W.3d at 366; *Mañon*, 142 S.W.3d at 388. If Brumitt based his negligent-misrepresentation claim on a failure to perform a promise of future conduct or on a representation that certain conduct would occur in the future, the claim sounds in contract, and Brumitt may not recover under a negligent-misrepresentation claim as a matter of law. *See Lindsey Construction, Inc.*, 541 S.W.3d at 366; *Gay v. City of Wichita Falls*, 457 S.W.3d 499, 508 (Tex. App.—El Paso 2014, no pet.); *Mañon*, 142 S.W.3d at 388.

Rather than basing his negligent-misrepresentation claim on an alleged representation of existing fact, Brumitt based his negligent-misrepresentation claim on numerous alleged promises or alleged representations by First Bank that it would close and fund the loan to DTSG on a given date in the future. On appeal, in

addressing the evidence of First Bank's alleged representations, Brumitt states that "[t]he evidence reflects at least nineteen (19) promises by the bank that the bank would close and fund the loan on a given date." Because Brumitt based his purported negligent-misrepresentation claim on First Bank's alleged failures to perform promises of future conduct or on alleged representations by First Bank that certain conduct would occur in the future, the claim sounds in contract, and Brumitt may not recover under a negligent-misrepresentation claim as a matter of law. *See Lindsey Construction, Inc.*, 541 S.W.3d at 366; *Gay*, 457 S.W.3d at 508; *Mañon*, 142 S.W.3d at 388.

Brumitt asserts that, if he cannot recover on his breach-of-contract claim, then there is no way that his negligent-misrepresentation claim can be subsumed by his breach-of-contract claim. We disagree. *See Lindsey Construction, Inc.*, 541 S.W.3d at 362–64, 366 (applying similar analysis of negligent-misrepresentation claims despite having previously affirmed summary judgment as to breach-of-contract claims); *see also Sterling Chemicals, Inc. v. Texaco, Inc.*, 259 S.W.3d 793, 799 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (concluding that economic-loss rule negates negligence claims even if the plaintiff is not in privity of contract with the defendant and cannot maintain a breach-of-contract claim).

Brumitt relies upon the Supreme Court of Texas's opinion in *Federal Land Bank Ass'n of Tyler v. Sloane* as support for his ability to pursue his negligent-misrepresentation claim. *See* 825 S.W.2d 439, 440–43 (Tex. 1991). The *Sloane* court addressed whether the prospective borrowers' negligent-misrepresentation claims against a bank were barred by the statute-of-frauds requirement in section 26.01 of the Business and Commerce Code and whether the prospective borrowers could recover for mental anguish or lost profits under these claims. *See id.* The

prospective borrowers did not assert breach-of-contract claims or allege that the bank represented it would close and fund a loan to them in the future. *See id*. at 442. Rather, the prospective borrowers alleged that the bank did not agree to loan them money yet negligently represented an existing fact — that the bank had made such an agreement. *See id*. The *Sloane* case is not on point. *See id*. at 440–43.

Brumitt asserts that Texas law allows a plaintiff to recover under a negligent-misrepresentation claim even if the representations supplying false information are part of a contract. But, none of the cases Brumitt cites for this proposition address a negligent-misrepresentation claim. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304–05 (Tex. 2006) (addressing fraudulent-inducement claim); *Formosa Plastics Corp. U.S.A. v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (addressing fraudulent-inducement claim); *American Nat'l Petroleum Co. v. Transcontinental Gas Pipeline Corp.*, 798 S.W.2d 274, 278–79 (Tex. 1990) (addressing tortious-interference-with-contract claim). These cases are not on point.

Brumitt suggests in part of his appellate brief that First Bank falsely represented that the SBA had approved the loan by First Bank to DTSG. In each of the Letters, Duffy stated that the loan was subject to approval by the SBA for a seventy-five percent guaranty. Oprea testified that First Bank told him that it was First Bank's obligation to seek this approval from the SBA. Oprea stated that from October 2007 forward, Oprea was presuming that Duffy was seeking this approval because every discussion Oprea had with Duffy was "not basically about approval; it was about closing and funding."

Oprea sent Duffy an email in August 2008, asking Duffy if he had obtained the SBA approval and stating that the board of directors of DTSG was asking for a

copy of a document showing that the SBA had approved the loan. A week later Duffy emailed Oprea stating that Duffy thought they could have an increase in the loan amount approved by the SBA on August 28, 2008, and that they could close on August 29, 2008. In this statement Duffy was addressing his conduct in the future; Duffy did not state that the SBA had approved the loan. The trial evidence showed that Duffy received an approval letter from the SBA on September 11, 2008. Four days later, Duffy texted Oprea stating "u r approved." Oprea emailed this text to Brumitt. Oprea testified that he understood the text to mean that the SBA had approved the loan. Shortly thereafter Oprea reviewed the approval letter from the SBA that provided confirmation that the text message was correct. This letter was the first SBA approval letter that Oprea had received from First Bank. Brumitt saw the SBA approval letter, and he testified that he had assumed that the SBA already had approved the loan before September 11, 2008. There was no evidence at trial that Duffy or some other agent of First Bank stated before September 11, 2008 that the SBA had approved the loan. After this date, any statement by Duffy or First Bank that the SBA had approved the loan would not have been false.

Because Brumitt based his negligent-misrepresentation claim on a failure to perform a promise of future conduct or on a representation that certain conduct would occur in the future, the claim sounds in contract, and Brumitt may not recover under a negligent-misrepresentation claim as a matter of law. *See Lindsey Construction, Inc.*, 541 S.W.3d at 366; *Gay*, 457 S.W.3d at 508; *Mañon*, 142 S.W.3d at 388. Therefore, we sustain First Bank's fourth issue in part, reverse the trial court's judgment as to the negligent-misrepresentation claim, and render judgment that Brumitt take nothing on his negligent-misrepresentation claim.

**B.      May Brumitt recover exemplary damages based on the jury's finding of gross negligence?**

First Bank further argues that, because Brumitt may not recover based on a tort claim, Brumitt may not recover exemplary damages. Because we already have ruled that Brumitt may not recover on the only tort claim on which the trial court based its judgment, Brumitt may not recover exemplary damages. *See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998). Thus, we reverse the trial court's judgment awarding exemplary damages against First Bank and in favor of Brumitt and render judgment that Brumitt take nothing on his request for exemplary damages. We need not and do not address First Bank's other arguments as to Brumitt's claims.

### III.  CONCLUSION

Because Brumitt's negligent-misrepresentation claim sounds in contract, Brumitt may not recover under it as a matter of law. And, because Brumitt may not recover on the only tort claim on which the trial court based its judgment, Brumitt may not recover exemplary damages. Therefore, we reverse the trial court's judgment as to Brumitt's claims against First Bank and render judgment that Brumitt take nothing against First Bank.


/s/     Kem Thompson Frost
        Chief Justice


Panel consists of Chief Justice Frost and Justices Donovan and Brown.