**AFFIRM in Part, REVERSE in Part, and REMAND; Opinion Filed February 26, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01187-CV

### LINDA DOUGLAS, Appellant
### V.
### TAYLOR SIMS AND DALLAS PERFORMANCE, LLC., Appellees

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-16-03688-E**

## MEMORANDUM OPINION

Before Justices Whitehill, Molberg, and Reichek
Opinion by Justice Molberg

Linda Douglas requested that Dallas Performance, LLC install a new camshaft in her 2004 Corvette. Dallas Performance subsequently did additional work on the car. When Douglas learned of the charges for the additional work, she disputed that she authorized the work. Douglas subsequently paid the balance due on the work she admittedly authorized and requested that Dallas Performance return the car. Dallas Performance refused to do so because Douglas had not paid the full amount of the charges for all the work. Douglas sued Dallas Performance and its owner, Taylor Sims, seeking damages and the return of the car.

Dallas Performance filed a counter-petition, asserting Douglas agreed to pay storage fees for the car and failed to pay either the storage fees or the full amount of the charges for the work done on the car. The jury found in favor of Dallas Performance and Sims. Based on the jury's

verdict, the trial court awarded Dallas Performance $9,000 on its breach of contract claim for storage fees, $3,200 on its quantum meruit claim for the work it had performed on the car, and $8,750 for attorneys' fees.

In three issues, Douglas asserts the evidence is legally insufficient to support the jury's findings that she agreed to pay storage fees or that Dallas Performance was entitled to recover on its quantum meruit claim and the trial court erred by awarding Dallas Performance attorneys' fees. Because there was no evidence to support the jury's finding that Douglas was reasonably notified that Dallas Performance, in performing the motor repair work, expected to be paid by Douglas, we reverse the trial court's award to Dallas Performance of $3,200 on its quantum meruit claim and render judgment that Dallas Performance take nothing on that claim.

Further, while the evidence is legally sufficient to support the jury's finding that Douglas agreed to pay storage fees until she paid the balance due for the work she authorized, it is legally insufficient to support the amount of storage fees awarded by the trial court. We suggest a remittitur of $4,942.86, the amount of storage fees charged by Dallas Performance after September 11, 2015, the date on which Douglas paid for the work she authorized.

Finally, because we have significantly changed the trial court's judgment, we reverse the trial court's award of attorneys' fees to Dallas Performance and remand the issue of attorneys' fees for a new trial.

In one additional issue, Douglas contends that, because Dallas Performance did not have a legal right to possession of the car after September 11, 2015, there was no evidence to support the jury's findings that Dallas Performance did not convert or wrongfully detain the car and she established her conversion and wrongful detention claims as a matter of law. However, based on the conditioning language in the charge, the jury did not answer questions relating to Dallas Performance's defenses to Douglas's conversion and wrongful detention claims or whether

–2–

Douglas proved she was entitled to any recovery on the claims. Accordingly, in the interest of justice, we reverse the trial court's judgment that Douglas take nothing on her conversion and wrongful detention claims against Dallas Performance and remand those claims for a new trial.

We affirm the trial court's judgment in all other respects.

## Background

Before Douglas purchased the 2004 Corvette in 2012, a prior owner had made modifications to the car, including the installation of an after-market camshaft. Douglas decided she wanted to install a larger camshaft in the car so that it would sound "bigger." In September 2013, Brent Bernius, Douglas's boyfriend, took the car to Dallas Performance and discussed the desired modifications with Chris Tolbert, the sales manager, and Luke, a mechanic.[1] Tolbert told Bernius the cost of the work would be $3,979.68, and agreed that Douglas could make payments on the balance. The parties did not agree as to when, or in what amount, those payments would be made.

Douglas decided to have the work done and, on September 16, 2013, Bernius had the car towed to Dallas Performance. According to Douglas and Bernius, the car could have been driven there, but they chose to have the car towed because scheduling issues prevented them from going to Dallas Performance at the same time. However, Tolbert testified that Bernius said there was a noise in the valve train and the car was not holding oil pressure and requested that Dallas Performance not start the engine of the car because it could cause "more harm." Bernius made a down payment of $1,500 on the requested work.

Eight days later, Tolbert sent an email to Douglas stating that Sims and Luke were concerned about possible motor problems and recommended the motor on the car be pulled and

---

[1] Luke's last name is not in the appellate record.

–3–

"torn down" to "really see what's going on."[2] Tolbert recognized that, due to Douglas's budget, they were "unable to go that direction." Tolbert stated Dallas Performance would "do the cam, lifter and oil pump swap" and that, hopefully, the "swap with everything will actually solve any issues" Douglas and Bernius were having with the car. Dallas Performance, however, would "offer no warranty on it's [sic] work or the motor." Tolbert requested permission to proceed with "the project."

Douglas discussed the issue with Bernius, and they decided not to have the motor pulled but added "pistons and rings" to the project. The total amount invoiced by Dallas Performance for the original camshaft work and the pistons and rings (collectively the camshaft work) was $4,791.56. Although neither Douglas nor Bernius signed the invoice for the camshaft work, Douglas admits she authorized the work.

On the back of the invoice for the camshaft work was Dallas Performance's "Terms, Conditions, and Release Agreement." One of the conditions was that Douglas would pay a storage fee of $40 per day if she left the car at Dallas Performance for more than three days after she was notified the work was completed. A similar statement was made on a sign in the front of Dallas Performance's shop. Douglas testified she did not read the terms and conditions when she received the invoice.

On October 17, 2013, Bernius signed an invoice authorizing Dallas Performance to remove and repair the engine (the motor repair work). The estimated cost of the motor repair work was $6,761.83, but the invoice reflected there would be additional charges after a machine shop completed its work. Bernius admitted he signed the invoice, but claimed he believed it was simply

---

[2] All of Tolbert's emails were addressed to Bernius, but sent to Douglas's email address. Bernius did not have access to Douglas's email account and was not involved in any communication by email with Tolbert.

an estimate for the work recommended by Dallas Performance that Douglas did not want to have done. Dallas Performance ultimately charged Douglas $7,077.64 for the motor repair work.

Tolbert sent an email to Douglas on December 20, 2013, requesting a payment of $1,000 toward the balance due on the "motor work." Douglas made the requested payment on January 30, 2014, leaving a balance due on the camshaft work of $1,479.68.

On February 17, 2014, Tolbert sent an email to Douglas stating the work on the car had been completed. Tolbert indicated Douglas had two options: (1) pay off the entire balance for the work, or (2) Dallas Performance would store the car until Douglas paid for the work, but would charge a storage fee of $50 per week. Douglas responded, "No problem," and requested that Tolbert send her a statement "showing charges and payments." Tolbert sent "both invoices."[3] Douglas replied, "Thanks."

Douglas made payments of $500 on March 26, 2014, and $1,000 on April 23, 2014. Douglas became ill in May 2014 and did not communicate with Dallas Performance again until Tolbert emailed her on Wednesday, August 6, 2014, asking whether "things are ok with you on making payments each month." Douglas requested Tolbert provide a "total" and indicated she hoped to pay the balance by Friday. She also asked if "anything" could be done about the storage fees. Tolbert responded that Douglas's "total" without the storage fees was $7,869.20, but was $8,869.20 including storage fees. Douglas replied that she had told Bernius the "total bill with you guys was almost 12," and he said, "No way."

Tolbert sent Douglas two invoices, stating the first invoice "for $4,000" was for the work Bernius "originally came in for which was the cam, springs, new lifters, tuning etc," the pistons, and the oil pump. The second invoice, which totaled "$7,077" was for "the majority of the motor

---

[3] Douglas offered into evidence only Tolbert's original email with an attached invoice for the camshaft work. Dallas Performance offered into evidence the entire email chain, but did not include the two invoices referred to by Tolbert.

–5–

work," including removing and reinstalling the motor, the charges from the machine shop to repair the block, install new rings, replace the bearings, and "balance," and the gaskets that were replaced when the motor was installed. Douglas responded that Bernius's "no way" statement was probably just for her, and she was sure "its [sic] right." She indicated she would let Tolbert "know Friday/Monday at the latest on pay off." At trial, Douglas denied this statement was an agreement to pay all the charges.

Douglas testified the August 6, 2014 email from Tolbert was the first time she learned about the charges for the motor repair work. She denied she authorized Dallas Performance to do the motor repair work and stated she was "in shock" over the $7,000 charge. As to the storage fees, Douglas knew Sims was going to charge her "something," but intended to ask Sims to waive the storage fees after she paid the remaining balance. Over the next several months, Douglas attempted to contact Sims several times about the charges, but he was never available to speak to her.

On April 23, 2015, Douglas paid $300 to Dallas Performance and received an invoice showing she owed $491.56 for the camshaft work. The invoice also indicated Douglas was being charged $50 per week for storage, although it did not list a total amount of storage charges. In May 2015, Douglas paid Dallas Performance an additional $260. On September 11, 2015, Douglas made a final payment to Dallas Performance of $260, bringing her total payments to $4,820. Douglas requested that Dallas Performance return her car, but it refused to do so.

Douglas sued Dallas Performance and Sims, asserting claims for conversion; wrongful detention; violations of the Texas Deceptive Trade Practices Act; making, presenting or using a fraudulent lien; and contracting for or charging usurious interest. Dallas Performance filed counterclaims for breach of contract and quantum meruit/unjust enrichment. The jury found (1) against Douglas on all her claims, (2) Douglas breached an agreement to pay storage fees, and (3)

Dallas Performance was entitled to recover in quantum meruit for the motor repair work. The jury awarded Dallas Performance $9,000 on its breach of contract claim, $3,200 on its quantum meruit claim, and reasonable attorneys' fees of $8,750. The trial court rendered judgment in accordance with the jury's verdict.

## Standard of Review

In her first three issues, Douglas complains the evidence is legally insufficient to support the jury's findings that Dallas Performance did not convert or wrongfully detain the car, she breached a contract for the payment of storage fees, and Dallas Performance was entitled to recover in quantum meruit for the motor repair work.

In evaluating the legal sufficiency of the evidence to support a jury's finding, we must determine whether the evidence at trial would enable reasonable and fair-minded jurors to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We view the evidence in the light most favorable to the finding, crediting favorable evidence if reasonable jurors could, while disregarding all evidence to the contrary, unless reasonable jurors could not. *Cent. Ready Mix Concrete Co., Inc. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller*, 168 S.W.3d at 802, 807. "If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so." *City of Keller*, 168 S.W.3d at 822. So long as the evidence falls within the zone of reasonable disagreement, we will not substitute our judgment for that of the jury. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, No. 17-0578, 2019 WL 406075, at *6 (Tex. Feb. 1, 2019).

A party challenging the legal sufficiency of the evidence to support an adverse jury finding on an issue on which she did not have the burden of proof at trial must demonstrate on appeal that there is no evidence supporting the adverse finding. *Exxon Corp. v. Emerald Oil & Gas, L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). Anything more than a scintilla of evidence is legally sufficient to

support the finding. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005) (per curiam). More than a scintilla of evidence exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)); *see also Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). However, evidence that is "so weak that it only creates a mere surmise or suspicion" that a fact exists is regarded as no evidence. *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.,* 434 S.W.3d 142, 156 (Tex. 2014).

When a party challenges the legal sufficiency of the evidence to support an adverse finding on which she had the burden of proof at trial, she must demonstrate on appeal that the evidence established as a matter of law all vital facts in support of the claim. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). In reviewing a "matter-of-law" challenge, we first examine the record for evidence that supports the adverse finding. *Dow Chem. Co.*, 46 S.W.3d at 241; *City of Keller*, 168 S.W.3d at 827. If there was no evidence to support the adverse finding, we examine the entire record to determine whether the contrary proposition was established as a matter of law. *Dow Chem. Co.*, 46 S.W.3d at 241. We will sustain the challenge only if the contrary proposition was conclusively established. *Id.*; *Pak v. AD Villarai, LLC*, No. 05-14-01312-CV, 2018 WL 2077602, at *8 (Tex. App.—Dallas May 4, 2018, pet. denied) (mem. op.).

### Quantum Meruit

In her third issue, Douglas asserts the evidence was legally insufficient to support the jury's quantum meruit findings. Douglas specifically argues there was no evidence she (1) accepted, used, and enjoyed the motor repair work or (2) was reasonably notified that Dallas Performance expected to be paid for the work.

Dallas Performance sued Douglas for breach of contract based on her failure to pay for the motor repair work and, alternatively, sought to recover the value of the motor repair work under quantum meruit. The jury found that Douglas did not agree to pay Dallas Performance for the motor repair work. Because it found that Douglas did not agree to pay for the motor repair work, the jury was asked whether Dallas Performance performed compensable work for Douglas for which it was not compensated. The jury was instructed that Dallas Performance performed compensable work if it:

> [R]endered valuable services or furnished valuable materials to Linda Douglas; Linda Douglas accepted, used, and benefited from the services or materials; and, under the circumstances, Linda Douglas was reasonably notified that Dallas Performance, LLC expected to be compensated for the services or materials.

The jury found Dallas Performance "performed compensable work for Linda Douglas for which it was not compensated" and the reasonable value of the compensable work was $3,200.

"Quantum meruit is an equitable remedy that is 'based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted.'" *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018) (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (orig. proceeding)). The purpose of the remedy is "to prevent a party from being 'unjustly enriched' by 'retain[ing] the benefit of the . . . performance without paying anything in return.'" *Id.* (quoting *Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988)). To recover on a quantum meruit claim, a party must prove: (1) it rendered valuable services or furnished valuable materials; (2) for the person sought to be charged; (3) the person sought to be charged accepted those services and materials, and used and enjoyed them; and (4) the person sought to be charged was reasonably notified that the person performing the services or furnishing the materials was expecting to be paid by the person sought to be charged. *Id.* at 732–33. Generally, a party may not recover on a quantum meruit claim when there is a valid contract covering the services or materials furnished. *Id.* at 733.

We first consider Douglas's argument there was no evidence that she was reasonably notified Dallas Performance expected to be paid for the motor repair work. The "notice" element of a quantum meruit claim "focuses on what the recipient of the services knew or should have known at the time the services were accepted." *Myrex Indus., Inc. v. Ortolon*, 126 S.W.3d 548, 551 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). A person will be compelled to pay for services if he stands by and permits another to render those services, under circumstances that would convince a reasonable person the services were being done with the expectation of payment, and makes no effort to prevent the rendition of the services. *Barrow v. Booth*, 227 S.W. 1113, 1113 (Tex. App.—San Antonio 1921, no writ). Accordingly, to establish Douglas was reasonably notified that it expected to be paid for the motor repair work, Dallas Performance was required to prove Douglas knew or should have known the motor repair work was being done and that Dallas Performance expected to be paid for the work. *See id.* (concluding recovery in quantum meruit is "based upon the knowledge of the person served that the services were being rendered for him"); *see also Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (concluding subcontractor failed to prove quantum meruit claim because there was no evidence defendant had notice prior to delivery of beams that subcontractor anticipated payment from defendant).

Douglas testified she did not want Dallas Performance to do the motor repair work, did not authorize Dallas Performance to do the motor repair work, did not know the motor repair work was being done prior to the completion of the work, and never agreed to pay Dallas Performance's charges for the motor repair work. Dallas Performance presented no evidence that Douglas had notice the motor repair work was being done, but argues Bernius authorized the work and Douglas was notified by Tolbert on December 20, 2013, that Dallas Performance expected to be paid for the work. However, Bernius denied that he authorized the motor repair work, and the jury was not

asked if he agreed to pay Dallas Performance for the motor repair work or if he had any authority to make such an agreement for Douglas.[4]  Further, Tolbert's December 20, 2013 email indicated the "motor work" was finished, without specifying what that work entailed, and was no evidence that Douglas had notice Dallas Performance was doing the motor repair work or that it expected Douglas to pay for that work.

Because there was no evidence Douglas had reasonable notice Dallas Performance was performing the motor repair work or expected Douglas to pay for the work, there can be no "promise implied by law" for Douglas to pay for the work.  *See Hill*, 544 S.W.3d at 732. Accordingly, the evidence was legally insufficient to support the jury's finding that Dallas Performance performed compensable work for which it was not compensated.[5]  We resolve Douglas's third issue in her favor, reverse the jury's finding that Dallas Performance recover on its quantum meruit claim, and render judgment that Dallas Performance take nothing on that claim.

### Conversion and Wrongful Detention

In her first issue, Douglas asserts there was no evidence to support the jury's finding that Dallas Performance did not convert or wrongfully detain the car and that she established her conversion and wrongful detention claims as a matter of law.  Conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with, the owner's rights.  *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971); *Sky Grp., LLC v. Vega Street 1, LLC*, No. 05-17-00161-CV, 2018 WL 1149787, at *5 (Tex. App.—Dallas Mar. 5, 2018, no pet.) (mem. op.).  To establish a claim

---

[4] Dallas Performance did not object to the quantum meruit charge as submitted to the jury and did not request a question regarding whether Bernius was authorized to act on behalf of Douglas.  Accordingly, we are required to measure the sufficiency of the evidence against the charge as given.  *See Akin, Bump, Strauss, Hauer, & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 112 (Tex. 2009).

[5] Because we have concluded there was no evidence that Douglas was reasonably notified Dallas Performance expected her to pay for the motor repair work, we need not address Douglas's argument that there was no evidence she accepted, used, or enjoyed the motor repair work.  *See* TEX. R. APP. P. 47.1.

for conversion, the plaintiff must prove: (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 365–66 (Tex. App.—Dallas 2009, pet. denied).

Douglas conclusively established she owns the car, Dallas Performance has possession of the car, and she demanded the return of the car. Accordingly, the only issues in this appeal are (1) whether there was more than a scintilla of evidence to support the jury's finding that Dallas Performance had a right to possession of the car and (2) if there was no evidence to support the finding, did Douglas prove as a matter of law that Dallas Performance's possession was wrongful. *See Dow Chem. Co.*, 46 S.W.3d at 241. Dallas Performance argues the evidence established it has a right to possess the car based on a lien arising under section 70.001(a) of the property code. Douglas, on the other hand, contends Dallas Performance failed to plead it had a lien on the car, no lien was created under section 70.001(a), and even if a lien was created, it was extinguished when she paid the amount owed on the camshaft work.

*Sufficient Pleading*

Section 70.001(a) of the property code provides that a "worker in this state who by labor repairs an article, including a vehicle . . . may retain possession of the article until: (1) the amount due under the contract for the repairs is paid; or (2) if no amount is specified by contract, the reasonable and usual compensation is paid." TEX. PROP. CODE ANN. § 70.001(a). In its counter-petition, Dallas Performance pleaded that Douglas requested modifications to the car, Douglas and Dallas Performance agreed to the amount Dallas Performance would be paid for the work, Dallas Performance completed the requested work, Douglas failed to pay the total amount due, and "[a]s

–12–

a result of [Douglas's] failure to pay the total amount owed, [Dallas Performance] refused to release the vehicle to [Douglas]." Douglas filed an answer in which she asserted the defenses of waiver, estoppel, or "expiration of any worker's lien," referring specifically to Chapter 70 of the property code.

The purpose of pleadings is to give the other side notice of the party's claims and defenses, as well as notice of the relief sought. *Perez v. Briercroft Serv. Corp.*, 809 S.W.2d 216, 218 (Tex. 1991). Although Dallas Performance did not specifically assert it was entitled to possession of the car on the basis of a lien arising under section 70.001(a), it alleged it performed work on the car and, because Douglas did not pay for the work, it refused to release the car. In the absence of special exceptions, this was sufficient to provide notice to Douglas that Dallas Performance asserted it had a lien on the car. *See Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993) (in absence of special exceptions, petition should be construed liberally in favor of pleader); *see also In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding). Further, in her answer to Dallas Performance's counter-petition, Douglas specifically denied Dallas Performance was entitled to a lien under Chapter 70 of the property code, indicating she knew the basis of Dallas Performance's claims. *See Perez*, 809 S.W.2d at 218 (when defendant pleads defense or limitation of liability which contemplates a particular remedy, plaintiff is entitled to that relief despite failure to plead specifically for it). Based on this record, we conclude Dallas Performance adequately pleaded it was entitled to possession of the car pursuant to a lien arising under section 70.001(a) of the property code.

*Existence of Lien*

Douglas next argues Dallas Performance was not entitled to a lien under section 70.001(a) because Dallas Performance modified, rather than repaired, the car and even if a lien was created, it was extinguished on September 11, 2015, when she paid the balance owed for the camshaft

work. As relevant to this issue, the jury charge contained several groups of questions: Questions 15 through 21 dealt with Douglas's conversion claim and defenses to that claim; Questions 22 through 24 dealt with Douglas's wrongful detention claim and defenses to that claim; Questions 42 through 44 dealt with Dallas Performance's breach of contract claim based on Douglas's failure to pay for the motor repair work; and Questions 45 and 46 dealt with Dallas Performance's quantum meruit claim based on Douglas's failure to pay for the motor repair work.

Question 15 asked the jury if Dallas Performance or Sims converted the car and instructed that a conversion occurred if either defendant "unlawfully and without authorization" exercised control over the car "to the exclusion of, or inconsistent with" Douglas's rights as an owner. Question 22 asked the jury if Dallas Performance or Sims wrongfully detained the car by "exercising dominion and control in order to impair or exclude [Douglas's] right to possess and control her property." The jury answered "No" to both questions. In failing to find that Dallas Performance had either converted or wrongfully detained the car, the jury necessarily found Dallas Performance's possession of the car was not "unlawful," "without authorization," "inconsistent with Douglas's rights," or an "impairment or exclusion" of Douglas's right to possess and control the car. Based on the pleadings and the evidence at trial, this finding could have been based only on Dallas Performance's contention it had the right to possess the car until Douglas paid for all the work.

Only work authorized by the owner of the property will give rise to a lien under section 70.001(a). *Akers v. Patja, Ltd.*, No. 01-16-00945-CV, 2018 WL 3431801, at *4 (Tex. App.— Houston [1st Dist.] July 17, 2018, no pet.) (mem. op.). It is undisputed Douglas authorized the camshaft work. However, the jury found that Douglas did not agree to pay for the motor repair work,[6] and we have determined Dallas Performance failed to establish it was entitled to recover on

---

[6] Dallas Performance has not appealed that finding.

its quantum meruit claim for the work. Dallas Performance's failure to establish it is entitled to recover for the motor repair work directly impacts Dallas Performance's assertion it had a valid lien on the car, an issue crucial to the jury's determination of whether Dallas Performance converted or wrongfully detained the car.[7]

Douglas requests that we render judgment in her favor on her conversion and wrongful detention claims and order that Dallas Performance return the car or, alternatively, pay damages for the lost value of the car. However, the jury was instructed that if it found Dallas Performance neither converted nor wrongfully detained the car, it should not answer questions about the defenses asserted by Dallas Performance to those claims, the value of the car on the date of any conversion, whether the car should be returned to Douglas, and whether Douglas was entitled to exemplary damages. Accordingly, we cannot conclude that rendition is the appropriate remedy in this case. *See Henderson v. Gunter*, 328 S.W.2d 868, 873 (Tex. 1959) (noting that when there is some error in trial court's judgment, appellate courts have "rather broad discretion" to remand in interest of justice when "issues raised by the pleadings were not passed on"); *BML Stage Lighting, Inc. v. Mayflower Transit, Inc.*, 66 S.W.3d 304, 306–07 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (op. on reh'g) (concluding case must be remanded in interest of justice because, based on conditioning language in charge, jury did not answer questions relating to defendant's conversion claim after it determined plaintiff had lien on property).[8]

We have broad discretion to remand for a new trial in the interest of justice. *See* TEX. R. APP. P. 43.3(b) (when reversing a trial court's judgment, appellate court must render judgment trial court should have rendered except when interest of justice require remand for another trial);

---

[7] Dallas Performance's counsel conceded at oral argument that a determination it was not entitled to recover on its quantum meruit claim for the motor repair work would impact Douglas's conversion claim.

[8] *See also Dahlberg v. Holden*, 238 S.W.2d 699, 704 (Tex. 1951) (op. on reh'g) (concluding that when there is error in trial court's judgment but appellate court is not satisfied record was fully developed as to independent claim, justice requires claim be remanded for new trial).

–15–

*Engineered Plastics, Inc. v. Woolbright*, 533 S.W.2d 906, 909 (Tex. App.—Tyler 1976, no writ) (remanding conversion claim for new trial in interest of justice because evidence was not fully developed); *see also Boyles*, 855 S.W.2d at 603 (appellate court has broad discretion to remand for new trial in interest of justice where it appears party may have proceeded under wrong legal theory). Based on this record, we conclude that a re-trial of Douglas's conversion and wrongful detention claims, and any defenses Dallas Performance asserts to those claims, would be in the interest of justice.

We resolve Douglas's first issue in her favor, reverse the trial court's judgment that Douglas take nothing on her conversion and wrongful detention claims, and remand those claims for a new trial.

**Breach of Contract**

In response to Questions 37 through 40, the jury found Douglas agreed to pay Dallas Performance for storage fees, she failed to comply with that agreement, and she owed Dallas Performance storage fees of $9,000. In her second issue, Douglas contends there was legally insufficient evidence to support the jury's award because there was no evidence of an offer, an acceptance, a meeting of the minds, or consideration. Douglas argues in the alternative that, even if there was an agreement to pay storage fees, it terminated after she paid for the camshaft work.

To prove a breach of contract claim, the plaintiff must establish (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff sustained damages as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). A valid contract exists if (1) an offer was made; (2) the other party accepted in strict compliance with the terms of the offer; (3) the parties had a meeting of the minds on the essential terms of the contract; (4) each party consented to those

terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding. *Id.*

"[T]he offer must be reasonably definite in its terms and must sufficiently cover the essentials of the proposed transaction that, with an expression of assent, there will be a complete and definite agreement on all essential details," *Principal Life Ins. Co. v. Revalen Dev., LLC*, 358 S.W.3d 451, 455 (Tex. App.—Dallas 2012, pet. denied), and the acceptance must be identical to the offer, *BoRain Capital, LLC v. Hashmi*, 533 S.W.3d 32, 36 (Tex. App.—San Antonio 2017, pet. denied). Further, to have a "meeting of the minds," the parties must reach a mutual understanding and assent with respect to the subject matter of the agreement and its essential terms. *Revalen Dev., LLC*, 358 S.W.3d at 455; *Hashmi*, 533 S.W.3d at 36. "The parties must agree to the same thing, in the same sense, at the same time." *Revalen Dev., LLC*, 358 S.W.3d at 455. Whether the parties achieved a meeting of the minds is determined "using the objective standard of what the parties said and did, rather than the parties' subjective states of mind." *Lindsey Constr., Inc. v. AutoNation Fin. Servs., LLC*, 541 S.W.3d 355, 363 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also Searcy v. DDA, Inc.*, 201 S.W.3d 319, 322 (Tex. App.—Dallas 2006, no pet.).

Further, the parties' agreement must be supported by valid consideration. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006) (recognizing all contracts must be supported by consideration); *Chatelain v. Gideon Math & Reading LLC*, No. 05-16-00458-CV, 2017 WL 3392848, at *3 (Tex. App.—Dallas Aug. 8, 2017, no pet.) (mem. op.). Consideration is a bargained-for exchange of promises between the parties, *ULICO Cas. Co. v. Allied Pilots Ass'n* 262 S.W.3d 773, 790 (Tex. 2008), and "consists of either a benefit to the promisor or a detriment to the promisee," *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991).

When Douglas authorized the camshaft work, she received an invoice stating it was Dallas Performance's policy to charge storage fees of $40 a day if a car was left at the shop for more than

three days after the work was completed. There was a sign in Dallas Performance's office setting out this same policy. Douglas did not believe the $40-a-day fee applied to her because Dallas Performance had agreed to allow her to make payments on the balance due for the work. The parties, however, did not agree on essential terms of the payment arrangement, including when the payments were required to be paid and the amount of each payment. According to Douglas, the agreement was that she could make payments of any amount whenever she had the money. Tolbert, however, testified that he was never told "it might take years" for Douglas to pay for the work. Further, based on Tolbert's December 20, 2013 email requesting that Douglas pay another $1,000 toward the balance and February 24, 2014 email indicating Dallas Performance needed to "start getting more money" from Douglas on the car, the jury could have believed that Dallas Performance expected the payment arrangement would be of a fairly short duration.

In Tolbert's February 17 email, he informed Douglas the camshaft work on the car was completed and she could either (1) pay the balance owed for the work or (2) Dallas Performance would store the car "until the balance is paid off," but would charge Douglas a $50-a-week storage fee. Douglas responded, "No problem." Douglas and Bernius both testified they expected Dallas Performance would charge a storage fee of some amount, but hoped that Sims would reduce the amount of the charges after the balance was paid.

Viewed in the light most favorable to the jury's finding, the evidence established that Dallas Performance and Douglas initially failed to reach an agreement on the terms of a payment plan for the camshaft work and after the camshaft work was completed, Tolbert informed Douglas that Dallas Performance wanted to be paid for the work. Dallas Performance then made an offer to Douglas that, if she did not immediately pay for the work, it would store the car until the balance was paid, but would charge $50 a week for doing so. In essence, Dallas Performance offered to accommodate the open-ended payment plan requested by Douglas in exchange for a $50-a-week

–18–

storage fee, much less than Dallas Performance's usual $40-a-day storage fee. Douglas responded, "No problem," demonstrating she accepted Dallas Performance's offer. We conclude there was more than a scintilla of evidence to support the jury's finding there was an enforceable contract for the payment of storage fees. We resolve Douglas's second issue against her to the extent she contends the evidence is legally insufficient to support the jury's finding that she agreed to pay storage fees.

In the alternative, Douglas argues that any agreement to pay storage fees lasted only until she paid the amount owed for the camshaft work. The jury found Douglas did not agree to pay for the motor repair work and we have determined Dallas Performance failed to establish it was entitled to recover for the motor repair work on its quantum meruit claim. Accordingly, Douglas's agreement to pay storage fees terminated when she made the last payment for the camshaft work on September 11, 2015. Sims testified Dallas Performance began charging storage fees on February 20, 2014, three days after Douglas was notified the camshaft work was completed. There were eighty-one weeks and one day between February 20, 2014, and September 11, 2015. Accordingly, Douglas owed storage fees of $4,057.14.

The jury's award of $9,000 for unpaid storage fees is not supported by the evidence. Therefore, we resolve Douglas's second issue in her favor to the extent it challenges the legal sufficiency of the evidence to support the amount of storage fees awarded by the jury. If, as we conclude here, part of a damages award lacks sufficient evidentiary support, the proper course is to suggest a remittitur of that part of the verdict. *Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex. 1987); *see also* TEX. R. APP. P. 46.3 (court of appeals may suggest a remittitur). Consequently, we suggest a remittitur of $4,942.86 of the unpaid storage fees awarded by the jury. As the prevailing party at trial, Dallas Performance must be given the option of accepting the remittitur or having the claims relating to the storage fees remanded for a new trial. TEX. R. APP.

P. 46.3; *Larson*, 730 S.W.2d at 641; *McLeod v. Gyr*, 439 S.W.3d 639, 650 (Tex. App.—Dallas 2014, pet. denied). If the suggested remittitur of $4,942.86 is timely filed, we will modify and affirm the judgment in accordance with the remittitur. TEX. R. APP. P. 46.3; *McLeod*, 439 S.W.3d at 650. However, if the remittitur is not timely filed, we will reverse the trial court's judgment as it relates to Dallas Performance's breach of contract and quantum meruit claims for unpaid storage fees and remand those claims for a new trial. TEX. R. APP. P. 46.3; *McLeod*, 439 S.W.3d at 650.[9]

### Attorneys' Fees

In her fourth issue, Douglas asserts that, if Dallas Performance is not entitled to recover on either its breach of contract or quantum meruit claim, the trial court's award of attorneys' fees to Dallas Performance must be reversed. Generally, when damages are reduced on appeal, the appellate court should remand for a new trial on attorneys' fees unless it is "reasonably certain that the jury was not significantly influenced by the erroneous amount of damages it considered." *Young v. Qualls*, 223 S.W.3d 312, 314 (Tex. 2007) (per curiam). (quoting *Barker v. Eckman*, 213 S.W.3d 306, 314 (Tex. 2006)). We have rendered judgment that Dallas Performance take nothing on its quantum meruit claim and have suggested a remittitur of over half the damages it was awarded on its breach of contract claim. On this record, we cannot be reasonably certain the jury was not significantly affected by the erroneous damages award.

Further, if Dallas Performance does not agree to the remittitur, we will reverse the trial court's judgment as it relates to Dallas Performance's breach of contract claim and remand that claim for a new trial. In that event, we would, necessarily, reverse the trial court's award of attorneys' fees to Dallas Performance as well. *See Cotter & Sons, Inc. v. BJ Corp.*, 549 S.W.3d 715, 729 (Tex. App.—San Antonio 2017, pet. dism'd) ("[B]ecause we reverse the trial court's

---

[9] Because it determined Douglas agreed to pay the storage fees, the jury did not answer questions relating to Dallas Performance's quantum meruit claim seeking to recover those same fees.

–20–

judgment on the breach of contract and quantum meruit claims, we must reverse the award of attorney's fees.").

We resolve Douglas's fourth issue in her favor, reverse the trial court's award of attorneys' fees to Dallas Performance, and remand the issue of attorneys' fees for a new trial.

**Conclusion**

We resolve Douglas's third issue in her favor and render judgment that Dallas Performance recover nothing on its quantum meruit claim for the motor repair work. We resolve Douglas's first and fourth issues in her favor and remand for a new trial Douglas's claims for conversion and wrongful detention, as well as Dallas Performance's defenses to those claims, and Dallas Performance's claim for attorneys' fees.

We resolve Douglas's second issue in her favor to the extent of suggesting a remittitur of $4,942.86 of the breach of contract damages awarded by the trial court. We resolve the remainder of Douglas's second issue against her. In accordance with rule of appellate procedure 46.3, if Dallas Performance files with this Court within fifteen (15) days from the date of this opinion a remittitur of $4,942.86 of unpaid storage fees damages, we will modify the trial court's judgment to award Dallas Performance $4,057.14 for unpaid storages fees and, as modified, affirm the trial court's judgment awarding Dallas Performance breach of contract damages. If the suggested remittitur is not timely filed, we will reverse the trial court's judgment on Dallas Performance's breach of contract claim for unpaid storage fees and remand Dallas Performance's breach of contract and quantum meruit claims for unpaid storage fees to the trial court for a new trial. *See* TEX. R. APP. P. 46.3.

We affirm the trial court's judgment in all other respects, including that Douglas take nothing from Sims on all of her claims and take nothing from Dallas Performance on her claims

–21–

for violations of the Texas Deceptive Trade Practices Act; making, presenting, or using a fraudulent lien, and contract for or charging usurious interest.

/Ken Molberg/
KEN MOLBERG
JUSTICE

171187F.P05



# Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

LINDA DOUGLAS, Appellant

No. 05-17-01187-CV      V.

TAYLOR SIMS AND DALLAS
PERFORMANCE, LLC., Appellees

On Appeal from the County Court at Law
No. 5, Dallas County, Texas,
Trial Court Cause No. CC-16-03688-E.
Opinion delivered by Justice Molberg,
Justices Whitehill and Reichek
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part.

We **REVERSE** that portion of the trial court's judgment awarding appellee Dallas Performance, LLC $3,200 on it quantum meruit claim and **RENDER** judgment that appellee Dallas Performance, LLC take nothing on that claim.

We **REVERSE** that portion of the trial court's judgment ordering that appellant Linda Douglas take nothing on her claims for conversion and wrongful detention against appellee Dallas Performance, LLC and **REMAND** those claims to the trial court for further proceedings consistent with this opinion.

We **REVERSE** the trial court's award of attorneys' fees to appellee Dallas Performance, LLC and **REMAND** that claim to the trial court for further proceedings consistent with this opinion.

We suggest a remitter in the amount of $4,942.86 on the damages awarded to appellee Dallas Performance, LLC on its breach of contract claim. In accordance with Texas Rule of Appellate Procedure 46.3, if appellee Dallas Performance, LLC files with this Court within fifteen (15) days from the date of this opinion a remittitur in the amount of $4,942.86, we will modify the trial court's judgment to award appellee Dallas Performance, LLC $4,057.14, along with pre- and post-judgment interest, for damages on its breach of contract claim and affirm as modified. If the suggested remittitur is not filed timely, we will reverse the trial court's judgment and remand Dallas Performance, LLC's claims for unpaid storage fees to the trial court for further proceedings consistent with this opinion.

We **AFFIRM** the trial court's judgment in all other respects, including that appellant Linda Douglas take nothing on her claims against appellee Taylor Sims and on her claims against appellee Dallas Performance, LLC for violations of the Texas Deceptive Trade Practices Act; making, presenting, or using a fraudulent lien; and contracting for or charging usurious interest.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 26th day of February, 2019.